JOHN R. SMITH, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED MARCH 19, 1908. No. 15,106.

1. **Waters:** RAILROADS: EMBANKMENTS. It is the duty of a railroad company to so construct its bridges across natural watercourses, and its roadbeds or embankments through the bottom lands of such streams, as to allow the passage of such flood waters as may reasonably be expected to occur occasionally; but it is not required to provide for the passage of the waters of extraordinary floods, such as are often designated as the act of God.

2. **Appeal:** VERDICT. Of two reasonable inferences deducible from the evidence this court cannot say that the one chosen by the jury is wrong.

3. **Jury:** CHALLENGE OF JUROR. The opinion of a juror as to the liability of the defendant for damages in other cases is not of itself a cause for challenge.

4. **Appeal:** EVIDENCE: HARMLESS ERROR. In an action for damages caused by alleged negligence in the construction of a railroad

bridge, the general rule is that it is error to admit, over objection, evidence that a change had been made in said bridge by the defendant since the time of the alleged damage, as it improperly tends to impute to the defendant an acknowledgment of its negligence in the construction thereof. But, where evidence of such fact has been previously introduced without objection, and the fact of the change otherwise proved, the admission of the incompetent evidence objected to is without prejudice.

5. **Damages:** DESTRUCTION OF CROPS. Where growing crops are totally destroyed by negligence, the measure of recovery is the fair market value thereof at the time of their destruction.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*James E. Kelby, Francis Martin, Frank E. Bishop* and *Fred M. Deweese,* for appellant.

*Reavis & Reavis, contra.*

EPPERSON, C.

The plaintiff is the owner of a tract of land situate on the south bank of the Nemaha river. The course of the river for the distance which we need to consider may be stated as follows: From the northeast corner of the plaintiff's land the river flows in a northeasterly direction for about half a mile, thence south for a distance of nearly one mile, thence in a northeasterly course to and beyond a bridge of the defendant railroad company across the river, known as bridge 67. This bridge is about two miles east of the plaintiff's land. The defendant's railroad approaches the Nemaha river from the northwest, coming to a point near the north bank of the river where it turns south, half a mile east of the plaintiff's land, thence east paralleling the general course of the river west of the bridge. For a distance of about one mile west of the bridge the railroad company had heretofore constructed a roadbed or embankment, leaving the same without culverts or openings for the escape of flood waters. Plaintiff alleges, in his petition, in substance and in part,

that the defendant's embankment or grade in its present condition catches all the flood waters, and flows the same to the south side of the river and back upon the lands of plaintiff; the opening under said bridge being insufficient to permit the proper escape of such flood waters, in consequence of which the plaintiff suffered the loss of certain crops during each of the years 1902, 1903 and 1904. Upon the trial of the case the court gave instruction No. 7, which is as follows: "You are instructed that, if you believe from the preponderance of the testimony in this case that the defendant railroad company raised its roadbed previous to the year 1902 high enough to arrest the flood water in the river in times of freshets between Pearsons Point and the bridge number 67 on east thereof, and that said water was thrown to the south side of said river, and that the bridge across the Nemaha river, being bridge number 67 as referred to in the testimony, and the openings or culverts, if any, in the embankment were not of sufficient size to permit the proper escape of said flood waters, and that by reason thereof the water was backed upon the land of plaintiff and held there until the growing crops of the plaintiff on his land were destroyed, then you are instructed that the defendant would be guilty of negligence, and you should find accordingly." It is contended that the instruction is erroneous because it condemns the construction as negligence, as a matter of law, simply because the grade and bridge interfered with the flood waters. In connection with instruction No. 7 we also consider instruction No. 8, which is as follows: "You are further instructed that, although you may believe from the evidence that defendant's crops were injured by flood waters, yet, before you can find for the plaintiff, you must be satisfied from a preponderance of the testimony that said overflow and damage to said crops was the direct and natural consequence of the negligence of the defendant in the proper construction of its roadway and bridges." Under these instructions, the right of the plaintiff's recovery is dependent entirely upon the

damage done by the defendant in its wrongful construction of its railroad embankment and its bridge over the channel of the river. It is the contention of the defendant that it would be at fault only if at the time it constructed its grade it failed to use reasonable care in constructing its road in view of the flow of the waters of the river and the valley; and that, with this measure of care fulfilled, then in subsequent years of heavy rainfall and disastrous floods the company could not justly be held to be guilty of negligence should the grade interfere with the flood waters. Such objection, we think, was contemplated and obviated by the trial court, who further, by instruction No. 9, expressly told the jury that the defendant in this case would not be liable for damage occasioned by the overflow of lands caused by extraordinary floods or freshets, such as the defendant company could not reasonably have anticipated and provided for in the construction of its said bridge, although such damage may to some extent have been occasioned by such embankment and bridge over the river.

Complaint is made of instructions 5 and 6. In No. 5 the court instructed the jury as follows: "It was the duty of the defendant in planning and constructing said embankment and bridge to use and employ the engineering knowledge and skill at the time of such construction ordinarily practiced in the construction of such work, and to see to the practical application of such knowledge and skill to the work of constructing said bridge and embankment, among other things, so as to allow the passage of water, such as is known to pass in said river annually, or which may be reasonably expected to occur occasionally, without regard to such great or sudden overflows as are often designated as the acts of God." By instruction No. 6 the jury were told that, if they found from the evidence that defendant thus constructed such bridge, then it would not be guilty of negligence, and would not be liable in this action; but, on the other hand, if it failed to exercise and employ such reasonable and proper skill

and care in the construction of said embankment and bridge, and that the overflow of plaintiff's land was the direct and natural result of such failure, and that the plaintiff suffered damage in consequence thereof, then the defendant would be guilty of negligence. It would perhaps have been as well had the court omitted the first part of instruction No. 5 relating to the employment of engineering knowledge and skill, and given an instruction directly in reference to the manner in which the embankment and bridge should be constructed with reference to the passage of such flood water as might reasonably have been expected. But the instructions were not unfavorable to the defendant. They properly stated the law, and are applicable to this case. *McCleneghan v. Omaha & R. V. R. Co.*, 25 Neb. 523.

There is no doubt but that the rainfall during the seasons in which plaintiff's crops were destroyed was heavy; and defendant contends that the damage was caused by excessive rainfalls, and was not due to the improper construction of its railroad embankment and bridge. The evidence, we think, would have been sufficient to have sustained this contention; and, had the verdict been for defendant, it would not have been set aside. On the other hand, the evidence is sufficient to justify a finding that the natural course of the flood waters of the Nemaha river at this place was in a northeasterly direction; that they were retarded and held back upon the plaintiff's land by the defendant's embankment for a time long enough to have destroyed his crops. In weighing the evidence the jury have chosen one of two reasonable inferences, and we cannot say that it is wrong.

During the impaneling of the jury, defendant challenged for cause two jurors. One upon his *voir dire* stated: "Q. You have seen the effects of the rainy weather down there, and the floods from the river, I suppose. Do you have any opinion with reference as to who is to blame in any way for the retention of the floods? A. Any place? Q. This place would necessarily be on the bottom land.

A. Yes, sir." We find nothing in this to indicate that this juror had formed or expressed an opinion, or was in any way disqualified from trying the case. It will be noted that the response made by the juror to the interrogatory first quoted was itself a question; and it does not appear that the response following the second question quoted was intended as an answer to the first. The record does not disclose any further examination of this juror as to his knowledge of the case, or his opinion as to who should prevail. The examination of the other juror challenged, upon his *voir dire,* was in part as follows: "Q. Have you any opinion about the question of the liability of the railroads in this case, or any other case similar to it? A. Well, yes; to a certain extent. Q. It would take some evidence to remove that opinion, would it? A. Yes, sir. By Mr. Deweese: We challenge for cause. By Mr. Reavis: Q. The question was asked you whether you have an opinion in this case, or some other case—similar case; have you any opinion as to whether or not the railroad company is at fault or in any way to blame or responsible for the backing of water on this land in this case? A. Not in this case. Q. You don't know anything about this case? A. No, sir. Q. Do you know where the land is situated? A. No, sir. Q. You have no opinion as to the merits of this case? A. No, sir. Q. You have no opinion as to whether the railroad company is to blame, or whether anybody is to blame? A. No, sir; I have not." The opinion of the juror as to the liability of the defendant in damages for crops destroyed in some other part of the valley did not necessarily incapacitate him for the trial of this case. His examination does not disclose that he had any opinion as to defendant's liability to plaintiff. The overruling of the defendant's challenges of these jurors was not error.

One witness called by plaintiff was permitted to testify that since the destruction of plaintiff's crops the defendant company changed their bridge by extending it, thereby increasing its capacity for carrying away the flood waters.

This evidence was incompetent, and may have been introduced for the purpose of indicating an acknowledgment of carelessness on the part of the defendant company in its former construction of the bridge. But, in view of the other evidence in this case, we cannot see wherein it has been prejudicial to the defendant, for we find that plaintiff himself testified to the same fact without objection, both on direct and cross-examination, and one of defendant's witnesses also testified to this fact on cross-examination without objection. This proof being produced, the admission of the incompetent testimony objected to was without prejudice.

As to the measure of damages, the evidence showed that at the time each crop was destroyed it had about matured and was a fair average crop, and, further, that it was totally destroyed. The witnesses testified as to the fair market value of the same. The court instructed the jury in this regard that, if they found for the plaintiff, they would find the fair value of the crops of the plaintiff which were destroyed by the negligence of the defendant, and thus arrive at the aggregate amount the plaintiff was entitled to. Where crops are partially destroyed the rule as to the measure of damages is "the difference in the fair market value of the crop just before the land was flooded * * * and immediately thereafter." *Chicago, B. & Q. R. Co. v. Mitchell*, 74 Neb. 563. However, where the crops are totally destroyed, it is not required that the rule be stated in the language used in the *Mitchell* case, but an instruction directing the jury to find the value of the crop at the time of its destruction is necessary. The evidence being given with reference to the fair market value of the crops, the omission of the word "market" from the instruction was not fatal.

We find no prejudicial error in the record, and we recommend that the judgment of the district court be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.