DAVID BOLSER, APPELLEE, v. FIDELITY-PHENIX FIRE INSURANCE COMPANY OF NEW YORK, APPELLANT.

FILED APRIL 14, 1932. No. 28201.

E. D. Crites, F. A. Crites, Charles O. Bailey, John H. Voorhees, Melvin T. Woods, Jr., and John J. Olsson, for appellant.

M. F. Harrington and George M. Harrington, contra.

Heard before Goss, C. J., DEAN, GOOD, DAY and PAINE, JJ., and LANDIS, District Judge.

DEAN, J.

This action was begun in the district court for Sheridan county by David Bolser, plaintiff, against the Fidelity-Phenix Fire Insurance Company of New York, defendant, to recover $3,000, with interest, for damages alleged to have been occasioned by a hailstorm on June 27, 1928, to certain growing crops of wheat and flax owned by Bolser and covered by a policy of hail insurance issued thereon by the defendant company. Upon trial to a jury a verdict

was returned in favor of the plaintiff for $3,555.90, and a judgment was rendered thereon. The defendant company has appealed.

The policy sued on herein became effective June 22, 1928, or the day after the plaintiff made his application therefor. By its terms the policy covered 120 acres of wheat, and 100 acres of flax in one field, and 300 acres of flax in another field. But it appears that the 120 acres of wheat was incorrectly described in the policy as being on the southeast quarter of section 21, township 38, range 40, whereas the correct description was the southwest quarter of section 21 in the township and range above designated. During the trial, counsel was granted leave to amend his petition by striking out the word "east" and substituting therefor the word "west," to conform his pleading to the fact. But no request was made by the plaintiff for a reformation or a change in the wording of the policy. And it is the contention of the defendant company that the court erred in allowing the plaintiff to amend his petition in the absence of any pleading of mutual mistake in entering the description in the policy.

So far as disclosed by the record, it appears that the description of the location of the land was incorrectly designated either by the agent or the plaintiff himself when the policy was issued. But the plaintiff had no wheat on the southeast quarter of section 21, described in the policy, and, of course, no gain could inure to him in submitting an incorrect description of the land. And where the proofs clearly disclose the tract of land which the policy was intended by the parties to cover, a mere clerical error in the description of such tract should not be permitted to bar the plaintiff's right to reimbursement for the loss of his crop and for which he paid the company the required premium on the policy. Reformation is not necessary to recover upon a policy which incorrectly states the location of the property intended to be insured. *State Ins. Co. v. Schreck*, 27 Neb. 527; *Phenix Ins. Co. v. Gebhart*, 32 Neb. 144; *Omaha Fire Ins. Co. v. Dufek*, 44 Neb. 241.

The application for the policy was written on June 21, 1928, and the hailstorm that is alleged by the plaintiff to have caused the crop damage occurred on June 27, following. But the company argues that the plaintiff's crops were damaged by hail June 20, and that he is therefore not entitled to recover under the policy in suit.

After the hailstorm of June 27, the plaintiff presented his claim to the company for the loss he contends he sustained thereby. Thereafter, on July 26, the company's agent and an adjuster for the company called on the plaintiff, and it appears that, in consideration of the return of the plaintiff's premium note to him by the company, the plaintiff's signature was obtained to an agreement which purported to release the company from any liability under the terms of the policy. On this feature of the transaction, it appears from the plaintiff's evidence that he was informed by the adjuster that, if he did not return the policy or release the company from liability thereon, he would be sent to the penitentiary for attempting to collect insurance on crops that were damaged before the policy was issued, as alleged by the company. The testimony of the plaintiff in respect of the threat made against him by the adjuster is corroborated by that of the company's agent. And an extenuating circumstance in behalf of the plaintiff plainly appears in the fact that he cannot readily speak nor can he understand the English language, nor can he write his own name plainly in English. He came to the United States from Russia when he was 24 years of age and at the time of the trial he was 50 years of age. That the release of the company from liaibility was obtained from the plaintiff under duress appears plainly to be established by the evidence, and the jury so found.

The plaintiff and his step-sons testified that there was a hailstorm in "the neighborhood," but they denied that the hail struck the plaintiff's crops on the 20th of June. One witness, who had crops in four sections near the plaintiff's land, testified that, although his, the witness', crops were damaged on that date, the plaintiff's crops

were not struck by hail on the 20th of June. To substantially the same effect is the evidence of other witnesses who testified that the hail did no damage to the plaintiff's crops June 20, the day before the policy in suit was issued to the plaintiff.

From the evidence of the company's agent, it appears that he wrote no hail insurance for the company after the season of 1928, but, so far as disclosed by the record, no charge was made against him by the company. And he testified that no damage was done to the plaintiff's crops by the hailstorm of June 20, although damage was sustained by other policyholders not in the immediate vicinity of the plaintiff.

The company's adjuster testified that an inspection of the plaintiff's wheat revealed that it had broken and "turned up and formed what we call an elbow, and the heads had grown up again towards the light; and the leaves had been broken off after that had happened." The wheat was compared with wheat in an adjoining field that was damaged by hail on the 20th and found to be similar thereto.

On behalf of the company, several witnesses who owned a tract of land adjoining the plaintiff's land testified that their crops were damaged by hail June 20, and that as far away as they could see the ground was white with hailstones. On the cross-examination of the witnesses, however, one of them testified that, in a former trial of the present case, he stated that he knew "practically nothing about" the plaintiff's crops.

In respect of the damage to the wheat and the flax in question here, the plaintiff testified that only about a bushel and a half of wheat to the acre was obtained from that crop after the hailstorm on the 27th of June as compared to the average yield of about 15 bushels to the acre. And in respect of the flax yield, it appears that the plaintiff's crop averaged only one and a half bushels to the acre after the hail as compared to the average yield of from 10 to 12 bushels. The wheat and flax, under normal crop conditions, were worth $15 and $20 an acre, respectively.

The jury were instructed to determine the percentage of the loss and apply that percentage to the gross insurance, and that amount would be the amount plaintiff was entitled to recover, if it was 5 per cent. or more. We do not think the court erred in the rule so submitted to the jury, and we think the evidence supports its finding in respect thereof. And where the amount of damage sustained to the crops by the hail is established by the evidence, and the jury were correctly instructed as to the measure of damages, the judgment will not be disturbed on appeal.

A review of the evidence discloses that it conflicts in respect of material issues. And while the hail storm on June 20 appears to have been general over the vicinity in question, it is not improbable that the storm missed the plaintiff's crops. In fact, it may be assumed that, because of the hailstorm on the day before, the plaintiff made his application for the policy in suit here. The evidence in the present case has twice been submitted to a jury and twice the verdicts rendered were in favor of the plaintiff and against the company. We have held: "The finding of a jury on a disputed question of fact, when supported by sufficient competent evidence, will not be disturbed by a reviewing court, even though, from an examination of the record, the evidence seems to preponderate to the contrary." *Chicago, B. & Q. R. Co. v. Winfrey,* 67 Neb. 13. And at a later period we held: "Of two reasonable inferences deducible from the evidence this court cannot say that the one chosen by the jury is wrong." *Smith v. Chicago, B. & Q. R. Co.,* 81 Neb. 186. And even where, as in the present case, the testimony conflicts on every material point at issue, but is sufficient to sustain a verdict for either party, it is to be borne in mind that the jury, as triers of fact, passed on the credibility of the witnesses and their verdict will not be disturbed unless clearly wrong. *Anderson v. Chicago, B. & Q. R. Co.,* 102 Neb. 497.

As a condition precedent to the overruling of the motion for a new trial, the plaintiff filed a remittitur of $300 from the judgment. The court thereupon entered a

judgment against the defendant company for $3,255.90 and $300 as attorney's fees. Thereafter counsel for plaintiff filed an attorney's lien for $1,627.95 against the judgment so entered. Counsel for the defendant company contend that the court erred in allowing $300 as attorney's fees, to be taxed as costs, in view of this fact. However, it appears that no fee was allowed counsel in the second trial of this case, and we know of no section in the statute prohibiting the allowance of $300 as an attorney's fee to be taxed as costs in the present case.

The judgment is

AFFIRMED.