WILLIAM BOYD, SR., APPELLEE, V. LINCOLN & NORTHWESTERN RAILROAD COMPANY ET AL., APPELLANTS.

FILED SEPTEMBER 25, 1911. No. 16,468.

1. **Appeal: ISSUES: PLEADING.** Upon appeal the same cause must be presented in this court that was tried in the court below. If an issue is there tried by both parties, and without objection from either that the issue is not sufficently pleaded, such objection will not be considered in this court as ground for reversal.

2. ———: EVIDENCE: SUFFICIENCY. The objection in this court that the verdict is not supported by the evidence will not justify a reversal, unless the failure of evidence is so manifest that all

reasonable men, acting upon the evidence alone, must agree that it is insufficient.

3. **Damages:** GROWING CROPS. Immature, growing crops are not generally considered as having a market value. In such case the reasonable value under all the circumstances may be shown in determining the damages caused by an injury thereto.

4. **Trial:** OBJECTIONS TO EVIDENCE. An objection to evidence on the ground of insufficiency of the petition in alleging damages is in the nature of a demurrer, and should challenge the court's attention directly to the condition of the pleading; a general objection that the evidence is incompetent is insufficient.

5. **Appeal:** DAMAGES: INSTRUCTIONS. If growing, immature crops are totally destroyed, the measure of damages is the reasonable value of the crops before the injury. In such case an instruction that the "market" value of crops "damaged or destroyed" is the measure of damages is erroneous, but is prejudicial to plaintiff alone, when the evidence is conclusive that such crops were totally destroyed and had no market value, and the reasonable value is clearly shown.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*James E. Kelby* and *Halleck F. Rose,* for appellants.

*A. G. Wolfenbarger* and *George W. Berge, contra.*

SEDGWICK, J.

The plaintiff recovered a judgment in the district court for Lancaster county against these defendants for damages which he alleged he sustained by reason of his lands being overflowed by water in the seasons of 1907 and 1908, caused by the negligence of the defendants in making certain improvements in their roadbed and track immediately west of the city of Lincoln. The defendants have appealed.

1. The first contention of the defendants is that the pleadings and evidence do not support the verdict and judgment. In making these improvements the defendants constructed a new grade for their tracks, running directly west through the valley adjacent to the city of

Lincoln, between three and four miles in length. Middle creek flows through this valley in an easterly direction, entering into Salt creek near the east end of this new grade. The course of Middle creek was substantially on the south side of the new grade, but at three different points the grade interfered with the old channel, and at each of these points a new channel for the creek was cut along the south side of the grade. One of these new channels is at the east end of the grade, another near the west end, and the third is located between these two. It is the third or middle channel that is described in the petition, and is alleged to have been improperly constructed, so as to prevent the free and natural flow of the water. The plaintiff introduced evidence attempting to show the negligence and improper construction of this middle channel, and also introduced evidence tending to show that this new grade, which is several feet higher than the general level of the land, caused the damage complained of. The contention of the plaintiff in that regard was that before this grade was constructed, in seasons of high water, the general course of the water over the valley was towards the north and east, and that the slope of the land in that direction was such that the water flowed freely away from the plaintiff's land, which was located on the south side of this grade, and so the plaintiff's land was not overflowed, and that owing to the construction of this grade without openings the water was gathered on the south side thereof, which was one of the causes of the plaintiff's land being overflowed. The defendants in their briefs contend that no such cause of action is stated in the petition; that the evidence in regard to the obstruction of the water caused by the grade was wholly incompetent under the allegations of the petition, and should not have been admitted or considered. Of course, the plaintiff must prove the cause of action which he alleges. He cannot sue upon one cause of action and recover upon another not alleged.

The grades, new tracks and trackage are mentioned in

the petition, and it is alleged that the defendants "built high grades and embankments to the north and east of said premises," to the great injury and damage of the plaintiff, and that in making these improvements the defendants "performed the work in a negligent, reckless, careless and unnecessary manner," and that, "because of the dams, high grades and embankments aforesaid, the banks of said Middle creek were overflowed." All of these allegations of the petition, however, are, by language that is not at all uncertain, directly referred to the new channel which the defendants had cut for Middle creek about one-half mile below the plaintiff's premises. It is not directly alleged that the construction of the grade and tracks resulted in diverting the waters of Middle creek and causing them to be turned aside from their bed and channel, and no other injurious effect from these grades and tracks is anywhere alleged in the petition. There is no allegation in the petition that the water, before this grade was made, could escape across this land to the north and east of this grade, so that this circumstance would relieve the plaintiff's land from inundation, or that this grade in any manner prevented this water from so escaping; and, to make it certain and beyond question that the plaintiff's cause of action was the improper construction of this unnatural channel for Middle creek, it is emphatically alleged in the petition "that the said Middle creek, if allowed and permitted to occupy and flow in its natural and usual bed and channel, would not have overflowed at all in the vicinity of and on said premises, even in times of heavy rains and freshets, and would not have overflowed in the month of June, 1907, but for the wrongful acts, negligence and doings of said defendants, and the injury and damage suffered and sustained by plaintiff as hereinafter set forth was wholly on account of the negligence, carelessness and unnecessary acts and doings of said defendants in filling in, damming up and diverting the waters of said stream as aforesaid." The parties, however, have tried the case upon the issues now con-

tended for by the plaintiff. Plaintiff's first witness gave evidence as to the general conditions obtaining in the valley before and after the grade, dikes and other improvements were made, and also as to the form and construction of the improvements in general. Many objections were made to his testimony on various grounds, but we find no suggestion by defendants that the allegations of the petition were insufficient to support the widest investigation of the character of the improvements as a whole and their effect upon flood conditions existing in the valley. In similar testimony of subsequent witnesses examined by plaintiff, we find general objections. The plaintiff's son John was asked: "Tell whether the water was higher on the north and west side of the Denton cut-off than on the south and east?" and the objection interposed was: "The defendants object as wholly immaterial, and it is not a condition that could in any manner affect the flooding of his father's land below." When this question was put in a somewhat different form so as to apply specifically to a point some distance above plaintiff's land, the objection interposed was: "The defendants object as incompetent, immaterial, irrelevant, and as having no bearing upon the issues." The defendants also in their evidence went fully into the whole matter of the improvements there and the effect upon flood conditions The case was tried as though the allegations of the petition covered the whole situation, and the objection to the petition comes now too late.

2. The principal question, then, presented in the case is as to the sufficiency of the evidence to support the verdict and judgment. The evidence in the bill of exceptions covers nearly 700 pages of typewritten matter. The plaintiff asserts in the briefs that this evidence is sufficient, and asserts that it is the duty of the defendants who challenge the sufficiency of the evidence to analyze the same and show wherein it is deficient. No attempt is made by the plaintiff to abstract or analyze the evidence or to point out those parts of the evidence which it is claimed suffi-

ciently support the verdict. The defendants have referred to some parts of the evidence which it is claimed show a proper and necessary construction of the improvements, and that the verdict is unsupported.

With such assistance, then, as we have had from the briefs, we have tried to analyze this mass of testimony to ascertain whether the judgment against the defendants is justifiable. The improvements are quite extensive and must involve a large outlay on the part of the defendants. They were in process of construction at the time of the floods in question. It is conceded that the particular new channel, described in the petition, which the defendants had constructed for the flow of Middle creek was incomplete. The old channel at this point was covered by the new grades for the tracks, and was therefore wholly obstructed. There is some conflict in the evidence as to the condition of the new channel. The defendants' engineer testified that the bed of this new channel at the west end, and where it was intended to receive the water of Middle creek, was only two feet higher than the natural bed of Middle creek at that point. Other witnesses testified that it was from four to six feet higher; and one witness, whose testimony upon that point probably is not very reliable, made the obstruction much larger. The non-expert witnesses for the plaintiff testified that the width of the new channel was not nearly as great as the width of the former channel of the creek, but they have made no measurements. The engineers of the defendants testified to the width and depth of the new channel, but they had failed to measure the width of the old channel at the point of their conjunction. The jury might find from this evidence that the natural channel of Middle creek was very much obstructed by the work of the defendants, so as to force the water from the creek and cause it to overflow the surrounding lands in large quantities. Not far from the plaintiff's land the defendants have built on the north side of the grade a dike or embankment, extending north from the grade several hundred feet, the purpose of which

was to turn the water to the south side of the grade and into the channel of Middle creek. Several witnesses testified that the effect of this was, together with the principal grade extending east and west a distance of about $3\frac{1}{2}$ miles, to confine the water on the south side of the grade, and to prevent the general flow to the north and east, as had formerly been the course of the water. There was also testimony that the water during the whole period of the flood was very much higher on the south side of the grade than it was on the north side, so much so that it forced passages through the grade, but not sufficiently to allow a free flow of water and so prevent the damage to plaintiff's land complained of. There was evidence, apparently reliable, tending to show that the flood of 1908 was of such magnitude that the whole valley, both north and south of this new grade, was covered with water from the "hills on the north to the hills on the south," and for a great distance up the stream beyond the plaintiff's land. The evidence is uncontradicted that at the lower or south end of this new grade the water was higher than it had ever been before, so much so that it flooded the station used by the defendants and the depot grounds, which had never occurred on any other occasion; but Mr. Bignell, upon whose testimony this latter point principally depends, was not able to say, when questioned upon cross-examination, that the water on the south side of the new grade was not higher than on the north side, or that the flood of the station grounds was not caused, partly at least, by this new grade which it was claimed carried the body of the water down to the vicinity of the station and prevented it escaping to the northeast below the station grounds. He shows that there were several breaks in the grade caused by the flood water, but to what extent this lowered the water on the south side of the grade, or tended to equalize the volume of water with the water on the north side of the grade, he does not attempt to say. We are not called upon to determine this question of fact *de novo*, as in equity cases. Unless the evidence is so clear and cer-

tain that all reasonable men acting upon the evidence alone must conclude that this damage was not caused by the negligence of these defendants, we cannot interfere with the verdict of the jury. Applying this rule, we have concluded with some hesitancy that the verdict of the jury is sufficiently supported.

3. The witnesses were allowed to testify as to the value of the crops destroyed. The defendants insist that the inquiries should be limited to the market value. This is undoubtedly the rule when the articles in question have a market value. Immature, growing crops cannot be said to come within that rule. *Fremont, E. & M. V. R. Co. v. Crum*, 30 Neb. 70; *Kansas City & O. R. Co. v. Rogers*, 48 Neb. 653; *Fremont, E. & M. V. R. Co. v. Harlin*, 50 Neb. 698, 714; *Berard v. Atchison & N. R. Co.*, 79 Neb. 830; *Pribbeno v. Chicago, B. & Q. R. Co.*, 81 Neb. 657; *Morse v. Chicago, B. & Q. R. Co.*, 81 Neb. 745; *Thompson v. Chicago, B. & Q. R. Co.*, 84 Neb. 482. Certain kinds of crops, if mature and capable of proof as to quantity and quality, may have a market value. The evidence does not appear to show such condition of the crops in question. We think the ruling of the court in this respect was right. While it may be difficult to ascertain the real damages sustained, the defendants cannot escape liability for that reason.

*Chicago, B. & Q. R. Co. v. Mitchell*, 74 Neb. 563, and *Smith v. Chicago, B. & Q. R. Co.*, 81 Neb. 186, are cited by the defendant as holding that the evidence must be limited to the market value of the crops destroyed. It does not appear from the opinion in either of these cases that the court was discussing the question here presented. In the former the question discussed was as to the sufficiency of the evidence to establish the amount of damage recovered, although the evidence is not quoted at length. The instruction given by the trial court, in which it is stated that the measure of damage is "the fair market value of the crop just before the land was flooded, in the manner above alleged, if proved, and immediately there-

after," is quoted, and it is said that this was the proper measure. It is, however, evident that the writer of the opinion had in mind the time to which the proof should be limited in considering the value—that is, before and after the injury complained of—and was not discussing or considering the effect to be given to the word "market" in the instruction, an effect which, as in this case, would be prejudicial to the plaintiff, and not to the party complaining of the instruction. In the latter case the point determined was that when the crop was totally destroyed the measure of damage would be the value of the crop before the injury. Here the word "market" was inadvertently used. The language used in these opinions in discussing other propositions of law was not intended to change the general rule of law in such cases.

4. It is also urged that the court erred in admitting testimony of damage to the plaintiff's pasture land. The allegations of the petition in regard to these supposed damages are somewhat indefinite. If pasturage is considered a crop, the general language of the petition may be considered sufficient for this purpose. The objection to this evidence was not on the ground of variance from the allegations of the petition. The principal witness on this matter was asked, "What was the fair and reasonable value, per acre, of this pasture land of your father's before July 5, 1908, before the flood, in the condition it was before the flood?" and the objection interposed was: "The defendants object as incompetent, and no foundation laid, and not the proper measure of damage, and the witness is not qualified." The point now urged, that the damage to the pasture is not sufficiently alleged in the petition, is not presented by this objection. The reason is stated in the objection for the assertion that the evidence called for is incompetent, and no reference is made to the supposed insufficiency of the petition. If it was intended to obtain a ruling upon that point, the trial court would be misled by the form of the objection. The case was tried by both parties upon the theory that the loss of this pasturage was one element of plaintiff's damage.

5. The eleventh instruction given by the court is complained of. It tells the jury that they should find "the fair market value of crops damaged or destroyed," and that "the measure of damage is based on the value of the growing crops." The damages caused by injury to growing crops are measured by the difference in value in the growing crops caused by the injury, and, if the crops are totally destroyed, the measure is the value before the injury. The evidence upon this point was furnished by plaintiff's witnesses. They testified that the crops were entirely destroyed, and the defendants offered no opposing evidence. The instruction, then, is technically erroneous in requiring the jury to find the "market" value, and in suggesting that some of the crops were damaged only. In other respects the instruction is correct, and in these two particulars it is prejudicial to the plaintiff, and not to the defendants.

The judgment of the district court is

AFFIRMED.