IN RE APPLICATION OF CARL SCHWARTZKOPF.
CARL SCHWARTZKOPF ET AL., APPELLANTS, V. AARON L. COVER ET AL., APPELLEES.
31 N. W. 2d 294

Filed March 12, 1948.    No. 32371.

*Neighbors & Danielson,* for appellants.

*Morrow, Lovell & Bulger,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER,

CHAPPELL, and WENKE, JJ., and BARTOS and JACKSON, District Judges.

BARTOS, District Judge.

On July 22, 1947, Carl Schwartzkopf, George F. Buechler, and Frances Buechler filed their joint petition in the district court for Scotts Bluff County, Nebraska, for a writ of habeas corpus against Aaron L. Cover, Beth L. Cover, and Aaron L. Cover as guardian of the person and estate of Robert Spencer Buechler, a minor. The object and prayer of the petition was to recover the custody of the minor child, Robert Spencer Buechler. The relators claim the right to the custody of the child by virtue of their relationship and contend that the respondents unlawfully are withholding from them the custody of the child.

The respondents, by their return to the writ, claim the right to the custody of the child by virtue of a relinquishment and consent executed by the mother in her lifetime in their favor.

A hearing was had to the court upon the issues as above outlined and evidence was adduced by all parties to this litigation. The trial court, after making special findings, entered a decree denying the writ of habeas corpus, dismissing the relators' petition, and declaring the infant to be in the lawful custody and care of the respondents. The relators have perfected their appeal to this court.

The appellants, hereinafter designated as relators, contend that: 1. The writing executed by Virginia Buechler was a relinquishment of control without an express consent and therefore was not sufficient under our statutes to justify adoption. 2. If the mother's relinquishment was a consent to adoption, it became inoperative upon her death and the exclusive right to custody of the child devolved upon the father, especially since the father has legitimated the child and there has been a judicial finding of his paternity. 3. The natural father

and the natural grandparents, as natural guardians, upon the death of the mother of a child born out of wedlock and before adoption is decreed, have the right to revoke the consent to adopt, executed by the mother in her lifetime. 4. The maternal grandparents of a child born out of wedlock, being found to. be fit, are entitled to the custody of the child upon the death or disqualification of the parents. 5. The best interest of the child would be served by recognizing the natural guardian's right to custody in the absence of a clear showing of unfitness.

The following facts are either admitted by the pleadings or appear uncontroverted from the evidence. Virginia Buechler was a daughter of George F. and Frances Buechler, residents of St. Louis, Missouri. She came to Scottsbluff, Nebraska, the latter part of 1943 to work as a radio communicator at the United States Army air base located in that city. She commenced keeping company with Carl Schwartzkopf sometime in 1945. Schwartzkopf was then a married man and the father of two children. She gave birth to a male child on the 17th day of April, 1947, in St. Mary's Hospital in said city. Carl Schwartzkopf admitted before and after the birth of said child, and admits in the petition, that he is the natural father of the child. Virginia Buechler and Carl Schwartzkopf never married. She died in Scottsbluff on the 21st day of May, 1947, as a result of an automobile accident in which Carl Schwartzkopf was also injured and thereafter hospitalized for several weeks.

On April 23, 1947, while in the hospital and in the presence of a nurse, Virginia Buechler signed an instrument whereby she surrendered her child and the custody and control thereof to Aaron L. and Beth L. Cover, husband and wife. The child was named in that instrument as "Robert. Spencer Buechler." This instrument was acknowledged by her before a notary public. She also, on the same day, signed and acknowledged before

a notary public a voluntary appearance in a court proceeding then filed in the county court of Scotts Bluff County and entitled "In the Matter of the Adoption of Robert Spencer Buechler, an infant." The respondents on the same day filed in the same court their petition, and the two instruments executed by the mother, for the adoption of the child. The child was then six or seven days old and the respondents took it to their home for the first time, where it has been in their custody ever since. The petition for the adoption of the child was set for hearing on the 12th day of June, 1947. No notice by publication or otherwise was ordered by the court, because the county court in fixing the time for hearing the petition for adoption of the child held that "no notice of publication be made herein for the reason that all interested parties are already before the Court." On June 12, 1947, the matter of the adoption was, on application of the petitioners (respondents herein), continued to the 25th day of October, 1947, for the reason that the child was not in the care and custody of the said petitioners for a period of six months as is required by law.

On May 29, 1947, the respondent Aaron L. Cover was, on due application therefor, appointed by the county court of Scotts Bluff County, guardian over the person and estate of the child. No notice was given by said court of the filing of the petition for the guardianship proceeding or of a hearing thereon. The respondent qualified as such guardian and is now the duly qualified and acting guardian over the person and estate of the child.

The relators demanded the custody of the child from the respondents. This demand was refused.

At the outset it must be remembered that this is an action for a writ of habeas corpus to determine the right to the custody of the child. It is not a proceeding to determine the right of adoption of the child by the respondents. As far as the record discloses, the adop-

tion proceedings are still undetermined and pending in the county court of Scotts Bluff County, Nebraska.

Adoption proceedings determine more than the custody of the adopted child. It has been held in the case of In re Estate of Enyart, 116 Neb. 450, 218 N. W. 89, that "Pursuant to this statute, the decree of adoption created, in law, between the adoptive parent and adopted child, the relation of parent and child, * * *."

Whether or not the writing executed by Virginia Buechler was a relinquishment of control without an express consent and therefore not sufficient under our statutes to justify adoption, or whether or not her consent to adoption became inoperative upon her death and could be revoked by the natural father of the child or by its grandparents, need not be decided at this time.

"Habeas corpus is not a corrective remedy and cannot be employed as a writ of quo warranto or as a writ or certiorari. While a writ of habeas corpus is in the nature of a writ of error in so far as it brings into review the legality of the authority by which the prisoner is confined, it is well settled that such writ will not be permitted to perform the functions of a writ of error or appeal for the purpose of reviewing mere errors or irregularities in the proceedings of a court having jurisdiction over the person and subject matter." 25 Am. Jur., Habeas Corpus, § 14, p. 152.

To the same effect is the case of In re Langston, 55 Neb. 310, 75 N. W. 828, wherein this court held that: "The writ of habeas corpus is not a corrective remedy, and is never allowed as a substitute for appeal or proceeding in error."

Habeas corpus proceeding is a proper remedy to determine the right to the custody of a child. The evidence in this case discloses the following pertinent facts relative to the custody of the child. The attending physician testified that the evening before the child was born he had a conversation in the hospital with Carl, who informed him that Virginia did not want the baby,

that she wanted it adopted into a good home, that he did not approve of her adopting the baby out but that there was not much he could do about it. The doctor also talked to Virginia about the child before it was born and she told the doctor in the presence of Carl that she did not want the child. They talked about adoption of the child and it was her wish that the child be adopted out, as they wanted to keep the child's birth a secret. The doctor had a number of conversations with her within the next two or three days after the child was born. He tried to convince her that the right thing for her to do was to keep the baby and get married. He even suggested that the baby remain in the hospital after she was well, for them to get married and then come back to get the child, but she was not receptive to that advice. She insisted that she could not get married and keep the baby. The doctor then made efforts to find a suitable home for the child. He did not tell her about the Covers. She told him that the lawyer was up to see her about the adoption papers for the child. She seemed relieved of the burden. After he told her he found a fine family she said: "That's fine."

The attending nurse during Virginia's stay in the hospital asked Virginia to look at the child and to feed it, but Virginia turned her back to her, said "No" and started to cry. While feeding the child in the same room the nurse asked Virginia why she did not want to keep the child since she and Carl were to be married. Virginia replied that she thought it was best they let it go and start all over. At no time did Carl or Virginia see the child while it was in the hospital, although they had plenty of opportunities to see it. Carl never asked who adopted the child. The nurse was present when the paper was signed wherein Virginia surrendered the child and the custody and control thereof to Aaron L. and Beth L. Cover. If Virginia did not read it, as Carl testified, she had the opportunity to read it. The evidence preponderates in favor of the fact that she did

read it because the nurse who is a witness to her signature testified that Virginia said, while reading the instrument, "So that's what they are going to call him?" The name "Robert Spencer Buechler" appears in the relinquishment.

We deem it necessary to detail this evidence in order to show that the respondents did not obtain the custody of the child surreptitiously. The mother and natural father of the child did not want it. It could not remain in the hospital. Through the kindly efforts of the attending physician a home was found for it. The Covers took it with the consent of its mother and at the same time took all necessary steps for its adoption and protection.

In a habeas corpus proceeding entitled In re Gould, 174 Mich. 663, 140 N. W. 1013, involving a contention between aunt and grandparents over the custody of their nephew and grandson, nine years of age, the Supreme Court used this language: "The power of parental control, though recognized as a natural right and protected when properly exercised, is by no means an inalienable one. When the 'right of custody' is involved between respective claimants for a child, the courts, though in the first instance recognizing prima facie rights of relationship, in the final test are not strictly bound by demands founded upon purely technical claims or naked legal rights, but may and should, in making the award, be governed by the paramount consideration of what is really demanded by the best interests of the child." The above is quoted with approval in Ex parte Bush, 240 Mich. 376, 215 N. W. 367.

"Ordinarily, the basis for the issuance of a writ of habeas corpus is an illegal detention, but in the case of the writ sued out for the detention of a child, the law is concerned not so much about the illegality of the detention as about the welfare of the child." 25 Am. Jur., Habeas Corpus, § 78, p. 203.

"The writ of habeas corpus was limited originally to

cases of restraint under color or claim of law. It has, however, been extended to, and generally made use of in, controversies touching the custody of infants, which are governed, not so much by considerations of strictly legal rights, as by those of expediency and equity, and above all the welfare and interest of the infant, * * *." 29 C. J., Habeas Corpus, § 101, p. 108.

This rule of law has been recognized by this court. In the case of Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 373, this court said: "The statute and the demands of nature commit the custody of young children to their parents rather than to strangers, and the court may not deprive the parents of such custody unless it be shown that such parent is unfit to perform the duties imposed by the relation or has forfeited the right."

The fair interpretation of the holding in that case is that where there is no positive evidence of unfitness on the part of the parent, then by virtue of the statute now being considered, section 38-107, R. S. 1943, the parents or the survivor of them being the natural guardians of their minor children, should not be deprived of their custody. In other words, after a full hearing upon the merits, if the issue of unfitness is presented, it is up to the court to say what is for the best interest of the child. That this court has so interpreted the decision in Norval v. Zinsmaster, *supra,* is evident from the subsequent decisions.

In a habeas corpus proceeding entitled In re Burdick, 91 Neb. 639, 136 N. W. 988, this court, citing Norval v. Zinsmaster, *supra,* held that: "Where a mother dies immediately after the birth of a child, and the father commits it to the custody of a competent woman who properly cares for it in a suitable home without compensation, and the father permits a mutual attachment to grow up between them for a number of years under a contract with him awarding to her its permanent custody, in a proceeding by the father to regain his child, the

general rule, that the controlling consideration is the child's own best interests, applies."

In the case of Steward v. Elliott, 113 Neb. 421, 203 N. W. 580, the same being a habeas corpus proceeding involving the custody and control of a minor child, the relator being the father of the child and the respondent being a stranger to it but being entrusted with its custody since the death of its mother, this court, in denying the writ and citing Norval v. Zinsmaster, *supra*, held: " 'In a controversy for the custody of an infant of tender years, the court will consider the best interests of the child, and will make such order for its custody as will be for its welfare, without reference to the wishes of the parties.' "

The suitableness and fitness of the contending parties for the custody of the child was an issue in this case raised by the pleadings and the evidence adduced. The trial court found that Carl Schwartzkopf, the natural father, was an unfit person to be entrusted with the custody of the child. Upon a careful examination of the evidence we arrive at the same conclusion. It would serve no useful purpose to extend this opinion by setting forth the facts which led this court and probably led the trial court to arrive at that conclusion.

The trial court found the Buechlers, grandparents of the child, and the Covers, to be extraordinarily well qualified and fitted to have the permanent care and custody of the child. We concur in that finding. The provisions of the statute referred to in Norval v. Zinsmaster, *supra*, do not take into consideration the rights of grandparents to the custody of a minor child as a matter of law. Therefore, we are confronted, under the evidence in this case, with the question: What is for the best interest of the child?

The grandfather and grandmother are respectively 55 and 49 years of age. Aaron L. and Beth L. Cover are respectively 30 and 28 years old. The Buechlers have raised seven children. The Covers had no children of

their own, being unable, according to their physician, to have any. The grandparents never had the custody of the child. In fact, they did not know of its birth until more than two months after it was born. The Covers have had its custody ever since it was six or seven days old. They have watched over it, have seen to it that its health has been perfect, and have taken it monthly for a physical checkup. They testify that they love the child. They intend to keep and to treat it as their own. On the other hand, it is a fair deduction from the evidence of the grandparents that, if need be, they would accept the permanent custody of the child, but that if Carl Schwartzkopf could establish a home and be able to take care of the child and love it as they would, then they would be willing to relinquish its custody to him. We have come to the conclusion from a careful examination of the entire record that the trial court arrived at the correct conclusion in dismissing the writ and in its finding that the Covers should retain the custody of the child.

The judgment of the district court is affirmed.

AFFIRMED.