IN RE APPLICATION OF ROSE BRUNO. ROSE BRUNO,
APPELLANT, V. REVEREND FLOYD FISCHER ET AL.,
APPELLEES.

45 N. W. 2d 178

Filed December 20, 1950. No. 32810.

*Harold L. Hunt* and *Ralph R. Bremers,* for appellant.

*Leary & Leary,* for appellees.

*James J. Fitzgerald* and *Joseph P. Inserra,* amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from an order denying an application for a writ of habeas corpus. We affirm the judgment of the trial court.

The general factual situation is as follows:

Petitioner, Rose Bruno, on a promise of a future mar-

riage, lived with a man for some months. During the spring of 1948, she consulted a physician, who advised her that she was pregnant and referred her to The Catholic Charities. That organization arranged for her medical care and hospitalization.

On February 20, 1949, the child Rosemary was born. The petitioner saw her once at the hospital. The mother was discharged from the hospital four days after the child's birth. The child remained in the hospital for two weeks when, with petitioner's consent, she was placed in St. James Orphanage. Petitioner testifies that she saw Mary C. Neugent, one of the respondents and an employee of The Catholic Charities, approximately every two weeks thereafter. That is denied by Miss Neugent. In any event, there were discussions about the future of the child. Successful treatment was had to correct a deformity of the child's feet. Petitioner did not pay any of these expenses and never saw the child again until September 1949. At that time she saw the child for several minutes at the orphanage. On September 23, 1949, after an extended discussion of the situation, both as to herself and as to the child, she signed a relinquishment of the child to The Catholic Charities of the Archdiocese of Omaha, Inc., and consented to the adoption of the child. This was acknowledged before a notary public.

Petitioner undertook to testify that she did not understand what she was doing, but it is patent from a reading of the testimony that she knew fully. She told her mother that evening, she became despondent and regretted what she had done.

During the next two or three days petitioner, her sister, and her mother undertook to secure a "withdrawal" of the relinquishment. On October 15, 1949, a hearing was had in the district court for Douglas County in an action entitled "An Inquiry into the Case of Bruno, Rosemary." No pleadings appear in the record. It is suggested that this action was either con-

templated or pending prior to the relinquishment signing. In any event, it proceeded after those events. Summons was served on the petitioner and she appeared with her attorney. As a result of that proceeding, the trial court entered the following order on that day: "Submitted on Petition and Evidence. Mother having been duly served as provided for by law and being present in Court and represented by Counsel, Mr. Harold Hunt, Atty. · Charges of dependency as set forth in the Petition are found to be true. Said Rosemary Bruno is ordered placed in the care and custody of the Catholic Charities of the Archdiocese of Omaha, Inc., a child placing agency, as guardian, for placement or adoption."

Thereafter on November 16, 1949, petitioner filed her application for a writ of habeas corpus for Rosemary Bruno, a minor. In it she alleged that she was the mother of Rosemary and entitled to her care, custody, and control; that the Reverend Floyd Fischer was the executive director of The Catholic Charities and St. James Orphanage; that Mary C. Neugent was an employee of The Catholic Charities; that Mary. C. Neugent had fraudulently and unlawfully obtained the care, custody, and control of the child and had it in St. James Orphanage, and that she and the Reverend Floyd Fischer refused to turn the child over to her; that Mary C. Neugent and St. James Orphanage claimed the child by virtue of "certain papers" which purportedly relinquished the child; that petitioner had signed as a result of misrepresentation and fraud; that The Catholic Charities and the orphanage claimed the custody because of claims for money for the child's care; and that they had no right to the child. Petitioner prayed for a writ granting her the care, custody, and control of the child. A writ was issued and served, returnable December 1, 1949. On that day the cause was called for trial. There was an appearance of counsel for petitioner and respondents.

The parties stipulated that they would waive the presence of the child, and that the child should be subject to the orders of the court. Petitioner then testified on direct examination. At its close the court, apparently on its own motion, adjourned the case to December 12, 1949.

On December 6, 1949, an answer was filed by St. James Orphanage, the Reverend Floyd Fischer, and Mary C. Neugent, in which they alleged the cause for their custody to be (1) that on February 28, 1949, petitioner surrendered the custody of the child to St. James Orphanage and that it has since had it; (2) that petitioner had abandoned the child since that date; (3) that on September 23, 1949, she relinquished the child for adoption to The Catholic Charities, which is the agent of St. James Orphanage; and (4) that on October 15, 1949, the district court had ordered the child placed in the care and custody of The Catholic Charities, as guardian, for placement or adoption.

On December 12, the trial proceeded with both petitioner and respondents offering evidence. The trial court entered an order denying the writ. Motion for a new trial was made and denied. Petitioner then appealed here.

Petitioner's first argued assignment of error goes to the answer to the writ. She charges that because it was not filed on December 1, she was entitled that day to a writ on making a prima facie case, and, second, that the answer when filed did not comply with the provisions of section 29-2817, R. R. S. 1943, in that it did not set forth the requirements of that section. This contention appears to be presented here for the first time.

It should be noted that on December 1, the trial proceeded as though an answer to the writ had been filed. Petitioner made no objection thereto in any way. The answer was on file before the cross-examination of petitioner and when the balance of the case was heard on the merits. Petitioner made no objection.

This contention was presented in Commonwealth ex rel. Zimbo v. Zoretskie, 124 Pa. Super. 154, 188 A. 365. The court held that the failure to file a return was not such a defect as to render invalid a hearing on the merits, in view of the petitioner's failure to make objection to the lack of a return or to the right of respondents and their witnesses to be heard, and refused to reverse on such a technical point. This decision was followed in State v. Wilson, 135 N. J. Law 398, 52 A. 2d ·50. We so hold here.

The second contention presents a different question. The answer did not set out "a copy of the writ, warrant, or other process, if any, upon which the party is detained," as provided in section 29-2817, R. R. S. 1943. However, it clearly referred to the proceeding and the order of October 15, 1949. We held in the case of In re Application of Niklaus, 144 Neb. 503, 13 N. W. 2d 655, that "This court in interpretation of this statutory provision has held that in the return to a writ of habeas corpus facts must appear which warrant restraint of the relator."

As we have pointed out, petitioner raised no question in the trial court of the sufficiency of the answer and when the order of October 15, 1949, was offered in evidence, did not raise this objection to its introduction.

The applicable rule is: "Upon appeal the same cause must be presented in this court that was tried in the court below. If an issue is there tried by both parties, and without objection from either that the issue is not sufficently (sic) pleaded, such objection will not be considered in this court as ground for reversal." Boyd v. Lincoln & N. W. R. R. Co., 89 Neb. 840, 132 N. W. 529, on rehearing, 92 Neb. 434, 138 N. W. 560. See, also, Sjogren v. Clark, 106 Neb. 600, 184 N. W. 159; Auld v. Walker, 107 Neb. 676, 186 N. W. 1008; Hensley v. Chicago, St. P., M. & O. Ry. Co., 118 Neb. 690, 226 N. W. 421.

Petitioner's next argued assignment goes to the suf-

ficiency of the evidence to sustain the judgment of the court, arguing that the petitioner desired to have her child; that she is physically, mentally, and financially competent to care for the child; and that she surrendered the child through duress and undue influence of Miss Neugent.

The trial court made no findings of fact. We have reviewed the evidence. We deem it ample to sustain findings contrary to the contentions of the petitioner. However, the decision here does not turn on those matters. After having secured the formally executed relinquishment of the petitioner, and that being questioned, the respondents then had the matter of custody presented to the court with the result of the order of October 15, 1949, placing the child in the care and custody of The Catholic Charities "for placement or adoption." This order was offered and received in evidence over the objections of the petitioner. Petitioner assigns as error here that it was erroneously received because based upon an informal conference held in chambers, and that no evidence was taken or sworn testimony given and no record was made, and hence it was not "a regular Court hearing." The above are recitals of alleged facts made in the objection. No offer of evidence was made upon which they were based.

Petitioner's contention here does not challenge the jurisdiction of the court over the person and the subject matter, but rather asserts that the order of October 15, 1949, should not have been received in evidence because of alleged irregularities in the proceedings prior to that entry. So far as this record discloses, the order stands as the final order of the court in that proceeding. This brings the matter within the rule approved in the case of In re Application of Schwartzkopf, 149 Neb. 460, 31 N. W. 2d 294: " "* * * While a writ of habeas corpus is in the nature of a writ of error in so far as it brings into review the legality of the authority by which the prisoner is confined, it is well settled that

such writ will not be permitted to perform the functions of a writ of error or appeal for the purpose of reviewing mere errors or irregularities in the proceedings of a court having jurisdiction over the person and subject matter' " and restated the rule there that " 'The writ of habeas corpus is not a corrective remedy, and is never allowed as a substitute for appeal or proceeding in error.' "

It follows that the trial court did not err in the admission of the order and did not err in denying the writ.

The judgment of the trial court accordingly is affirmed.

AFFIRMED.