HERSCHEL HAUSMAN, APPELLEE, v. JUDI SHIELDS, ALSO KNOWN AS JUDI SHIELDS HAUSMAN, APPELLANT.

165 N. W. 2d 581

Filed February 28, 1969. No. 37058.

William L. Monahan and Dennis L. Kemp, for appellant.

Dale T. Kirby, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and WALTER H. SMITH, District Judge.

WHITE, C. J.

This is a habeas corpus action. The question involved is whether the mother of 4-year-old Terry Joe Hausman, born October 12, 1964, is entitled to his custody. The plaintiff, Herschel Hausman, was living with the defendant, Judi Shields, at the time Terry Joe was born, subsequently took custody of the child during the period of the defendant's commitment to the State

Reformatory for Women at York, Nebraska, then relinquished its custody to the defendant for 2 weeks after her release from commitment and parole, and now seeks to regain its custody. The district court awarded the custody of the child to the plaintiff. We affirm the judgment of the district court.

The defendant, Judi Shields, first contends that there is no jurisdiction of court to entertain the habeas corpus action on the behalf of the plaintiff herein. Her testimony is that she was not living with the relator at the time she became pregnant and that he is not the father of the child. Plaintiff himself does not assert that he is the father and is uncertain as to its paternity. We need inquire no further as to the jurisdictional question. There are some states that hold to the contrary, but in Nebraska habeas corpus may be maintained by a complete stranger to a child to test the question of custody between the stranger and the natural parent. Lakey v. Gudgel, 158 Neb. 116, 62 N. W. 2d 525; Barnes v. Morash, 156 Neb. 721, 57 N. W. 2d 783; Clarke v. Lyon, 82 Neb. 625, 118 N. W. 472, 20 L. R. A. N. S. 362; In re Application of Schwartzkopf, 149 Neb. 460, 31 N. W. 2d 294; In re Burdick, 91 Neb. 639, 136 N. W. 988, 40 L. R. A. N. S. 887.

In a similar case involving a habeas corpus action between complete strangers and the natural mother of a child of tender years, our court laid down the applicable rules to be applied to the determination of custody. In Lakey v. Gudgel, *supra*, this court said as follows: "The legal principles on which the determination of this case must depend have been well stated in the opinions of this court. In Norval v. Zinsmaster, 57 Neb. 158, 77 N. W. 2d 373, 73 Am. S. R. 500, it was said: 'The statute and the demands of nature commit the custody of young children to their parents rather than to strangers, and the court may not deprive the parent of such custody unless it be shown that such parent is unfit to perform the duties imposed by the

relation or has forfeited the right.' See, also, In re Application of Schwartzkopf, 149 Neb. 460, 31 N. W. 2d 294.

"In the supplemental opinion in Gorsuch v. Gorsuch, 143 Neb. 572, 11 N. W. 2d 456, which was an action to modify a portion of a decree relating to the custody of a child, it was said: "The proper rule * * *, where the custody of minor children is involved, is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents. Where both parents are affirmatively found to be unfit, the custody of the child will be determined solely by the welfare and best interests of the child. * * * But this court has never deprived a parent of the custody of a child merely because, on financial or other grounds, a stranger might better provide.' See, also, Barnes v. Morash, *supra*.

"Custody of a child of tender years should be awarded to the mother, unless it is shown that she is unsuitable or unfit to have such custody, or through some peculiar circumstance is unable to furnish a good home. See, In re Application of Reed, 152 Neb. 819, 43 N. W. 2d 161; Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509; Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361; Barnes v. Morash, supra."

The plaintiff's evidence in this case is largely undisputed on the material facts. Herschel and Judi first met in 1960. Their relationship ripened into cohabitation. They were never married nor does it appear that they ever seriously contemplated marriage. They lived together at various times in South Dakota, in Bellevue, Nebraska, and finally in Council Bluffs, Iowa, at the time Terry Joe was born. From the time of the birth of the child until about December 1965, the evidence is very uncertain as to the relationship between the parties and the status of the child. It appears that sometime after the birth of the child, Judi left Herschel, took the child, and moved to Omaha, Nebraska. It also appears

that during this period of time of over 1 year she saw Herschel from time to time, and they would take the child to St. Helena, Nebraska, and leave it with Herschel's mother, Clara Hausman, who lived on a 214-acre farm with her husband, Herschel's father, and another single son. It appears that the child was with Mrs. Hausman and with the Hausman family all during the summer of 1965. We particularly note the lack of evidence on Judi's behalf as to exactly where the child was, how it was kept, and what its condition was during this period of time when she had left Herschel and moved to Omaha. Herschel testified that she was running around with other men, both during the period of time they were living in Council Bluffs and later, and this testimony is undisputed by Judi. In any event, in the fall of 1965, Judi became involved in serious trouble. Around Christmas 1965, Herschel received a call from Judi about the trouble she was in. His testimony in this respect is undenied in the record. It is as follows: "Q. Did she tell you what trouble she was in? A. Yes, then. Q. What did she tell you? A. That she had got in trouble with some niggers or colored people and they stole a bunch of money orders, government, something, signed a bunch of them, and they got in trouble. Q. And she needed a lawyer? A. Yes." Judi was convicted of uttering a forged instrument and was sentenced on January 13, 1966, for a period of 2 years in the York reformatory. She was in the York reformatory from January 13, 1966, until September 21, 1967. From September 21, 1967, until April 1, 1968, she was on parole and was released at that time. Herschel took the child to his family farm home near St. Helena, Nebraska, in late December 1965, or early January 1966. It was a 214-acre farm and he and his single brother are engaged in farming it, renting it from their mother, with whom they live in the family home. The evidence is undisputed that the child has the best of care; that Herschel's attitude toward, attention to, and

love for the child are the same as of a natural parent; that the child is healthy and well; and that it has developed an attachment for Herschel and his mother. There is a reasonable inference from the record that this child is being raised in a stable atmosphere, of love and comfort which a normal child should and is entitled to have.

After release from parole, Judi contacted Herschel and his mother, and they relinquished the child under the impression or representation that Judi, being the, mother, had an absolute legal right to possession and custody. Judi had the child for a period of 2 weeks until the present habeas corpus action was instituted. The record is undisputed that Herschel has returned to the farm at St. Helena, Nebraska, has stayed there continuously since then, has not left the farm, and has been engaged in the continuous farming operation with his mother and brother.

The evidence shows that Judi was charged in 1964 with contributing to the delinquency of a minor and served 5 days in jail. It also shows that she was charged with an insufficient fund check in 1965 and was sentenced to 15 days in jail. There is also evidence in the record that sometime after her release from parole in April 1968, after casually meeting a man in a restaurant where she was present with other people, she left the restaurant, got into his pick-up truck, accompanied him about one-half mile out on a farm road, had intercourse, with him, and took some amount of money from his billfold at the time. The man involved in this incident testified directly as to the facts. This testimony and evidence is denied in toto by Judi. At the time of the trial, Judi had a job as a maid in a Lincoln motel and was living in an apartment with another woman. Before that, she lived in a trailerhouse in Springfield, Nebraska, and took care of the illegitimate child of her cotenant in the trailer who testified in her behalf. The, evidence is that since her release from the reformatory

at York she has worked in the Whitehall School for
Children as a cook; that she quit there because of un-
satisfactory conditions in the home; that at the time of
the trial she had worked 2 weeks at the Topper Motel
at a salary of $70 per week; that prior to that she had
worked at the Stockade Cafe in Millard, Nebraska, for a
period of 6 weeks; and that prior to that she had worked
as a cook at "Eddy's" restaurant in Springfield,
Nebraska.

There is other evidence in the record which we do
not deem necessary to detail herein. Under the cir-
cumstances presented we are loath to disturb the judg-
ment of the trial court as to the custody of this child.
There could be little question, under the evidence pre-
sented in this record, that the best interests of this
child demand that it be kept in its present, stable en-
vironment of normal love and comfort which a child
of such tender years deserves. The evidence amply war-
rants an inference that Judi, at least for the time being,
has forfeited her right to the custody of this child, and
is unfit under the present circumstances to render it
the proper care and affection, either upon a compara-
tive or a minimal basis. This is not a case of wrench-
ing a child from a close and normal attachment to its
natural mother which has developed over a long pe-
riod of time and granting the custody to some stranger
merely because he is able to give it better, more con-
venient, and more luxurious surroundings. We feel
that considering the primary question before us, that
is the best interests of the child, the mother here has
failed to demonstrate, under all of the circumstances,
the minimal fitness from the standpoint of the stability
of a proper home for a child, from the standpoint of
moral background, the capacity to adequately and phy-
sically take care of the child and give it the close at-
tention and care that a child needs at Terry Joe's age.
In reaching these conclusions we are aided by the rule,
particularly applicable in a child custody case, that the

trial judge saw and heard the witnesses, observed their demeanor and conduct while testifying, and his conclusions under those circumstances will be given great weight by this court in making an independent determination of the facts as we are required to do.

In light of our conclusion it becomes unnecessary to decide other questions argued and presented in this case. The judgment of the district court is correct and is affirmed.

AFFIRMED.