IN RE PETITION OF ELOISE E. CAIN FOR A WRIT OF HABEAS CORPUS.
ELOISE E. CAIN, APPELLANT, V. DAVID ADAMS ET AL., APPELLEES, RODERICK H. DAVIS ET AL., INTERVENERS-APPELLEES.

195 N. W. 2d 489

Filed March 17, 1972. No. 38033.

Paul E. Watts, Michael N. Schirber, Samuel A. Boyer, Jr., and Stephen Greenberg, for appellant.

Fromkin, Fromkin & Herzog, for appellees.

Richard L. Weill of Kutak, Rock, Cohen, Campbell & Peters, for interveners-appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is a habeas corpus action to determine the custody of 3-year-old Stephen Mathew Adams, between his grandmother, Eloise E. Cain, and his father, David Adams, and his aunt, Joan C. Davis. Roderick H. Davis and Joan C. Davis intervened seeking custody. The dis-

trict court, after a full hearing, found that both the appellant grandmother and the interveners were fit to have the custody of Stephen Mathew Adams. It further concluded and determined that the best interests of the child as between the grandmother and the interveners were served by granting the custody to the interveners. We affirm the judgment and order of the district court.

Stephen Mathew Adams was 3 years of age, the grandson of the appellant, and the nephew of Joan C. Davis. The natural father, David Adams, has been convicted of manslaughter of the child's natural mother and is presently incarcerated. It would serve no purpose in this opinion to recite in detail all of the testimony introduced. We will recite briefly the pertinent facts. Joan C. Davis is the sister of the natural father. She and her husband, Roderick H. Davis, have been married about 4 years and have a 3-year-old son. Joan was 25 years of age at time of trial and both are college educated. Roderick H. Davis is an agent of the Equitable Life Assurance Society and was earning approximately $15,000 per year. Mrs. Davis is a housewife and mother, is not now working, and was staying at home to care for the children. They live in a west Omaha apartment complex with playground facilities, swimming pool, and grassy areas. There are numerous small children in the neighborhood.

In contrast to this general situation, the appellant, Eloise E. Cain, is 53 years old and resides in Little Rock, Arkansas where her 78 year old mother lives with her. She has been twice divorced, and testified that she would not remarry. She is a Civil Service employee, earning $7,856 a year. Since she is employed, she testified that the minor child would attend a day-care center in Little Rock during the hours she worked.

In this case the court is not faced with the many times onerous problem of weighing the comparative value of parental rights or determining the fitness or unfitness of the custodial applicant. The contestants in this controversy are people of high moral character, and possess

the requisite love and desire for the care of Stephen Mathew Adams. They are financially able to furnish proper food and clothing and the other environmental requirements for the raising, training, and care of Stephen Mathew Adams. We need not investigate any of the fine distinctions present in some of the rules applicable to custody controversies in a habeas corpus proceeding. In a controversy of this nature and between these parties, the court will consider the best interests of the child, and will make such order for its custody as will be for its welfare. Steward v. Elliott, 113 Neb. 421, 203 N. W. 580; Reed v. Reed, 152 Neb. 819, 43 N. W. 2d 161; Hausman v. Shields, 184 Neb. 88, 165 N. W. 2d 581.

In weighing the evidence in this case it is quite obvious that the district court, in exercising its discretion, considered the age of the parties and the effect of age on their ability to raise a child of tender years such as Stephen Mathew Adams is. The appellant is 53 years of age and plans to retire at the age of 65 years. Undoubtedly the trial court took into consideration the generation gap between the grandmother and Stephen Mathew Adams and was responsive to the principle that child rearing is a difficult problem in a modern age and such problems are accentuated by an age difference between the child and a custodial grandmother, such as we have here. When Stephen is 15 years of age and a teenager, his grandmother will be 65 years of age. On the other hand, the interveners, Joan C. Davis and her husband, are now just beginning their own family, and are obviously much better equipped over the next 20 years to raise a small child. We feel that one of the considerations impelling the lower court's decision was that when a child grows up with younger people, as here, in a family with other children, it has a better opportunity for a more normal and wholesome development than with people separated from it in age by about 50 years.

See In re Adoption of Jackson, 201 Wis. 642, 231 N. W. 158.

Touching briefly upon home conditions, the differential is apparent in that Mrs. Cain will continue working and the child would have to undergo, at a tender age, the loss of contact with the grandmother for long periods of time. She also described in her testimony that the problem of Stephen's playmates would be taken care of by transporting Stephen across the city to play with children of his own age and maturity. In contrast to this situation, Joan and Roderick Davis have a son, Rick, Jr., who is about 3 years of age and obviously would make a companion of Stephen Mathew Adams as he grew up. It takes no child psychiatrist to speculate about the tremendous advantage of this situation in the rearing of a small child over transporting it across a city to play for short periods of time with other children. Not decisive, but apparent in the record, is the fact that the Davises are now and will be in the future more financially able to furnish Stephen Mathew Adams the support and care necessary in a modern environment, including perhaps more advanced education, than he would probably be able to receive with the grandmother. Considering the other factors of a father figure being present in the home, his being able to live as a member of a happy family unit, and that the Davises would be able to handle much better the perhaps difficult problem of the natural father's visitation in the future, we have no doubt the district court came to the correct conclusion in this case. There is not a scintilla of evidence or argument in this case which would indicate that the trial judge abused his discretion in reaching the conclusion he did.

We have held in matters of this type that the decision of the trial court is peculiarly entitled to respect. It not only saw the parties and the witnesses and was better able to evaluate them, but was in much closer touch with the situation than this court, which is limited to a review of a written record. The judgment of the trial

court in cases of this nature is entitled to great weight in determining the best interests of children in custody proceedings. Fisher v. Fisher, 185 Neb. 469, 176 N. W. 2d 667.

The judgment of the trial court is in all respects correct and is affirmed.

AFFIRMED.