By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

PETER M. BACK ET AL. V. STATE OF NEBRASKA.

FILED FEBRUARY 8, 1906.   No. 14,457.

1. Contempt: JURISDICTION.   The district court has jurisdiction to punish contempt by fine or imprisonment, or both.

2. Injunction: VIOLATING: JURISDICTION.   By section 260 of the code a judge of the district court at chambers is given jurisdiction to enforce obedience of an injunction or restraining order, whether the same was allowed by the court or by a judge thereof. He has no jurisdiction to punish a violation of such order, as a criminal offense, by imprisonment.

3. Courts: ADJOURNMENT: PRESUMPTIONS.   Where the record shows an order adjourning a term of the district court to a future day, and judicial proceedings in the interval, it will be presumed, if necessary to support the jurisdiction of the court over such proceedings, that the order of adjournment was vacated, and the court reconvened.

4. Contempt: TRANSFERRING CASE.   Upon prosecution for contempt in the district court, the judge before whom the cause is regularly to be heard may refuse to transfer the cause to another judge of the same court for hearing, unless it is made to appear by due proof that a fair and impartial trial cannot be had before him, or that some other ground for change of venue prescribed by statute exists.

5. ———: INFORMATION: AMENDMENT.   A prosecution for constructive contempt is based upon an affidavit or information alleging the facts constituting the contempt. If such information is amended by interlineation in matter of substance, it must be reverified, and there must be a trial thereon as upon a new prosecution.

6. Injunction: VIOLATION: INFORMATION.   In a prosecution for constructive contempt in the violation of a restraining order, the affidavit or information must set forth the acts constituting the violation. The general allegation that the defendant has disobeyed the restraining order is not sufficient to give the court jurisdiction.

7. **Contempt: INFORMATION.** A prosecution for contempt is "in the nature of a prosecution for a crime," and the affidavit or information must state the acts constituting the offense with as great certainty as is required in criminal proceedings.

ERROR to the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed and dismissed.*

*W. J. Connell,* for plaintiffs in error.

*Norris Brown, Attorney General, W. T. Thompson* and *W. W. Slabaugh, contra.*

SEDGWICK, C. J.

While the city council of Omaha had under consideration the enacting of an ordinance entering into a contract on behalf of the city with the Omaha Gas Company providing for furnishing certain gas lights for lighting the city, an action was begun in the district court for Douglas county to enjoin these defendants and others as members of the city council, and the mayor of the city from "passing and approving" the ordinance in question. Application was made to one of the judges of that court for a temporary injunction. It appearing to the judge that notice should be given the defendants before an injunction was allowed, a time was fixed for the hearing, and in the meantime an order was entered restraining the mayor and council from passing and approving the ordinance. Afterwards, it having been brought to the notice of the judge by affidavits filed with him that there had been an alleged violation of the restraining order, the judge ordered an information filed by the county attorney charging the defendants with contempt of court. The information was filed accordingly, and trial had, upon which these defendants were adjudged guilty of contempt and sentenced to 30 days' imprisonment in the jail of Douglas county. To reverse this judgment they have brought the matter here upon petition in error.

1. The record and briefs present a question of jurisdic-

tion.   There are two sections of the civil code which de-
fine contempts and provide punishment therefor.   Pro-
ceedings to punish contempts, not committed in the
presence of the court, when considered with reference to
the object for which such proceedings are taken, fall into
one of two classes: (1) They may be strictly punitive,
that is, to vindicate the majesty of the law, and the au-
thority reposed by law in the court or judge, and for
this purpose to inflict exemplary punishment; or (2) they
may be remedial, to compel and insure obedience to the
mandate of the law as expressed in some order of the court,
or judge, rather than to punish for a past offense.   *Ne-
braska Children's Home Society v. State*, 57 Neb. 765.
Section 260 of the civil code relates to the latter class.   It
provides: "An injunction granted by a judge may be en-
forced as the act of the court.   Disobedience of an injunc-
tion may be punished as a contempt by the court, or by
any judge who might have granted it in vacation.   An
attachment may be issued by the court, or judge, upon
being satisfied by affidavit of the breach of the injunction,
against the party guilty of the same; and he may be re-
quired, in the discretion of the court or judge, to pay a
fine not exceeding two hundred dollars, for the use of the
county, to make immediate restitution to the party in-
jured, and give further security to obey the injunction;
or, in default thereof, he may be committed to close
custody, until he shall fully comply with such require-
ment, or be otherwise legally discharged."   By the first
clause character is given to the injunction order of a judge
sitting in chambers; it "may be enforced as the act of
the court."   By the second clause of the section a judge
of the court sitting in chambers may enforce the injunc-
tion by punishing a disobedience thereof as a contempt,
and this he may do whether the injunction was allowed
by the court itself or by a judge of the court in chambers.
He may require the party guilty of a breach of the in-
junction to make restitution to the party injured, and to
give further security to obey the injunction, and he may

enforce these requirements by imprisonment until they be complied with, but he is not given power to punish a past violation of an injunction as a distinct offense by imprisonment of the guilty party.

The general rule is that authority to punish for contempt belongs exclusively to the court in which the contempt is committed. *Johnson v. Bouton,* 35 Neb. 898. Without the provisions of section 260 the court alone, and not a judge thereof at chambers, could punish for contempt. This section declares the power of the court before whom the action is pending to punish for contempt, a power which exists independently of the statute. It also extends the power to punish to a judge of the court before whom the action is pending, and as the judge, as distinguished from the court, obtains his jurisdiction from this section of the statute, he must exercise it in accordance with its provisions and cannot exercise a greater jurisdiction than is there given him. In *Zimmerman v. State,* 46 Neb. 13, it is said in the opinion that the defendant "was arrested and brought before the court or judge," and later in the opinion there is language used indicating that a judge, as distinguished from a court, would have jurisdiction to punish a violation of a restraining order by imprisonment. It is not clear whether this language was *dictum* only, since the opinion does not show with certainty whether the proceedings were before the court in regular session, or before a judge in vacation. The defendant was restrained from diverting water from its natural channel, and immediately violated the restraining order by diverting the water. The offense was a continuing one, and the defendant might properly have been required by a judge at chambers to give security to obey the order, and in default of so doing might be imprisoned to enforce compliance. So far as the case appears to construe section 260 to give a judge at chambers jurisdiction to punish the violation of a restraining order by imprisonment, it is overruled. By section 669 of the code the jurisdiction of the court itself to punish for contempt

is recognized and declared, and without the limitations upon the power of punishment which are contained in section 260. There can be no doubt that under section 669, and even without regard to its provisions, the district court, being a court of general equity jurisdiction, could punish disobedience of its lawful orders by fine or imprisonment, or both.

Since the judge as distinguished from a court, deriving his jurisdiction from section 260, is without power to punish for contempt by imprisonment, it becomes important in this case to inquire whether these proceedings were had before the court or before one of the judges of the court sitting in chambers. The regular May term of the district court for Douglas county in 1905 began on the first day of May of that year, and continued from day to day thereafter by regular adjournment until the 7th day of August. On that day the seven judges of the court united in an order whereby the May term of court was adjourned until the 18th day of September, and the record shows that on the 18th day of September there was a formal opening of the court, all of the judges being present. The information in this case was filed on the 11th day of September. The defendants on the same day entered "their appearance in open court," and were arraigned and entered a plea of not guilty. An adjournment was taken until the 13th day of September, when a formal answer was filed by the defendants and the hearing was begun. After the evidence was completed, an adjournment was taken until the 15th day of September, at which time the argument was commenced, and in the midst of the argument the information was amended. This amendment and the objections taken thereto will be again referred to. The argument was completed on the 16th day of September and the court then took the matter under advisement until the 20th day of September, at which time the court announced the finding that the defendants were guilty of contempt.

It is urged in the brief that this record is conclusive

that these proceedings were had before the judge at chambers, and not before the court. We do not think that this contention is sustained by the record. In *Green v. Morse,* 57 Neb. 391, it was held:

"An adjournment of court to a subsequent day in the term is merely an intermission, and neither adjourns the term nor deprives the judges of control of the proceedings. Notwithstanding such an order the court may revoke it and reconvene before the time fixed in the order of adjournment. Where the record shows an order adjourning to a future day in the term, and judicial proceedings carried on in the interval, it will be presumed, in favor of regularity, that there has been a reconvention and an express or implied vacation of the order of adjournment."

The proceedings in this case purport to be in the court itself. The information was "filed in the office of the clerk of the district court," and the record recites that "at the May term of court, and on the 11th day of September, 1905, defendants were arraigned herein." All of the journal entries recite that the proceedings were had at the May term of court. The record recites that the defendants appeared in open court and were arraigned, and that the court heard the argument and the cause was submitted to the court. The rulings and orders all purport to have been made by the court rather than by a judge in chambers, so that the record brings the case within the rule announced in *Green v. Morse, supra.* These proceedings must be held to have been before the court, and there can be no doubt of the jurisdiction of the court to punish disobedience of its orders by imprisonment.

2. The defendants applied for a transfer of the hearing of the contempt proceedings to one of the other judges of the district court. This application was supported by an affidavit, which at some length recites various facts and circumstances tending, as was alleged, to show that the judge before whom the proceedings were pending was prejudiced against the defendant. This affidavit concludes as follows: "Affiant further says that he is and has

been upon friendly terms with his Honor Judge Sutton, and believes him to be honest and usually fair and impartial, but believes that for some reason Judge Sutton has an extreme bias or prejudice in this contempt matter, and affiant feels constrained to make this affidavit setting forth the facts hereinbefore narrated for the fair consideration of his Honor Judge Sutton to be passed upon by him in such manner as may seem reasonable and proper." Section 61 of the code provides for a change of venue when "it shall be made to appear to the court that a fair and impartial trial cannot be had in the county where the suit is pending, or when the judge is interested or has been of counsel in the case or subject matter thereof, or is related to either of the parties, or is otherwise disqualified to sit."

In *Le Hane v. State,* 48 Neb. 105, it is said: "There are other provisions of the statute allowing judges of different districts to hold court for one another; and in the first district, where this action arose, there are two judges. Where for any reason a case is of such a character that there would be any impropriety in the judge before whom it would in its orderly course go for trial presiding at the trial thereof, there is certainly nothing improper, by a respectful application for that purpose, in calling the facts to the attention of the judge and requesting that another judge of that district, or of some other district, be called in to try the case."

And so in the case at bar, if the judge to whom the application was addressed had considered the circumstances such as to make it proper to transfer the proceedings to another judge, certainly no objection could have been made to his so doing. If the evidence before the judge had been of such a character as to establish the fact that a "fair and impartial trial" could not be had before him, it would have been his duty to transfer the case. The affidavit, however, did not contain any allegation to the effect that a fair and impartial trial could not be had before the judge to whom the application was made.

42

The affidavit was made by the attorney for the defendants, and the above language quoted therefrom shows that the transfer of the case was not applied for as a matter of right, and fails to show that the defendants themselves believed that the supposed bias or prejudice of the judge was of such a nature that they could not have a fair and impartial trial before him. The application was rather an attempt to induce the judge upon his own motion to transfer the cause, and the evidence is not of such a nature as to show that the judge abused his discretion in refusing so to do. A judge is not disqualified to sit as a court to try a charge of contempt by the fact that the alleged contempt consists in disobedience of an order made by him. The facts proved must clearly show that an impartial trial could not be had before him.

3. It has already been stated that after the defendants had answered to the information, and the evidence had been taken, and the opening argument for the prosecution finished, and while the defendants' counsel was making his argument to the court, the prosecution requested leave to amend the information. Leave was granted, the information was amended, and this action of the court is assigned as error. The information contained a copy of the restraining order which it was alleged was violated. It restrained the defendants therein, who were the mayor and the members of the city council, "and each of them from passing and approving the ordinance now pending before the city council of the city of Omaha, which provides for a street lighting contract with the Omaha Gas Company, and enjoining the defendants and each of them from entering into any contract with any person or corporation for furnishing street lighting." The information contained no direct allegation that these defendants or any of them are, or at any time were, members of the city council. It alleged that in the action in which the restraining order was allowed the petition contained the allegations that these defendants and others were "the duly elected and qualified members of the city council

of the city of Omaha," and that the parties made defend-
ants in that action, "for sometime last past, up to and in-
cluding the present time, had constituted and do consti-
tute the said city council· of the city of Omaha." It also
alleged that the petition for an injunction contained the
allegation that the ordinance in question was pending
before the city council, and that the city council would
enact the same and would thereby enter into a contract
with the Omaha Gas Company to furnish certain lights
for lighting the city, unless restrained by the order of
the court. But the information contained no direct al-
legation of any of these facts. The information then
alleges that the restraining order, as set out in the informa-
tion, was issued and was duly served on the defendants
"named therein," but there is no direct allegation that
the defendants therein who were served with the restrain-
ing order are the same persons here complained of. The
violation of the restraining order on the part of these de-
fendants was in the information alleged in these words:
"That the defendants, Peter M. Back, Elliott D. Evans,
Charles Dyball, Peter C. Schroeder and Charles S. Hunt-
ington, unlawfully, wilfully, knowingly, purposely and
contemptuously neglected, refused and failed to obey said
restraining order, after due service upon said defendants
of said restraining order as by the court directed, and in
unlawfully, wilfully, knowingly, purposely and contemptu-
ously failing to obey said restraining order are guilty as
of contempt of the district court for said county and state.
That the disobedience of said restraining order tended to
hinder, delay and annoy the court and prevent the due
administration of justice." By the amendment which was
allowed the words, "and did vote to pass said ordinance,"
were interlined after the words, "restraining order," as
they first appear in the above quotation. The matter of
allowing this amendment by interlineation was much dis-
cussed in open court. The defendants were asked to
waive their objection to the amendment, and upon their
refusing to do so it was stated by the court that the

amendment would be allowed, and that the defendants
would be allowed a continuance, if necessary.   The defend-
ants then waived their objection to the manner of making
the amendment, but insisted that no amendment ought to
be allowed. It is now contended by the attorneys for the
state that in the discussion which followed, the defendants
waived all objection to amending the information, except
as to the materiality of the proposed amendment.   If
the information is jurisdictional, and if all proceedings
taken upon an insufficient information are void, it may
well be doubted whether the defendants could at this stage
of the proceedings waive objection to amend such informa-
tion by inserting material allegations that would cure its
defects, and consent that evidence taken upon such insuf-
ficient information might be considered in determining
the questions presented by the amended information.   In
proceedings under section 260 of the code, it has been many
times determined by this court that the affidavit is jurisdic-
tional, and the cases do not appear to make any distinction
in that regard between proceedings under that section
and proceedings by information under section 669 of the
code.   In any view of the matter, such waiver should be
express and clear, in order to justify the court in so pro-
ceeding upon such amended information, and we think
that this action of the court was erroneous.

4. If we disregard all other defects in the information,
the question would still remain, does the information as
amended sufficiently charge acts of violation of the re-
straining order?   It will be noticed that the original in-
formation was drawn upon the theory that it was sufficient
to allege in the language of the statute that the defend-
ants had disobeyed the restraining order.   But this theory
is contrary to the well-established rule in such cases.
Proceedings for contempt under section 260 are based upon
an affidavit filed with the court or judge, from which the
court or judge is satisfied of the breach of the injunction.
The language of this section precludes the idea that in a
prosecution thereunder the mere allegation, under oath,

that the injunction has been violated would be sufficient to warrant the issuing of an attachment against the offending party. The court has something more to do in determining whether an attachment shall be issued under this section than to consider the probable veracity of the party making the affidavit. The court or judge must be satisfied that the things done by the defendant constitute a breach of the injunction or restraining order, and can only determine this from a consideration of the acts of the defendant as shown in the affidavit. It has been held that proceedings for contempt under either section are "in the nature of a prosecution for a crime and the rules of strict construction applicable in criminal proceedings are governable therein." *Herdman v. State,* 54 Neb. 626. It was also held in that case that "the affidavit must state the acts of the asserted contempt with as much certainty as is required in a statement of an offense in a prosecution for a crime." See, also, *Hutton v. Superior Court,* 147 Cal. 156, 81 Pac. 409; *United States v. Agler,* 62 Fed. 824. That part of the affidavit in this case which charges or attempts to charge the acts constituting the violation of the restraining order, as the same was amended by the interlineation, is embraced in these words: "Unlawfully, wilfully, knowingly, purposely and contemptuously neglected, refused and failed to obey said restraining order and did vote to pass said ordinance after due service upon said defendants of said restraining order as by the court directed, and in unlawfully, wilfully, knowingly, purposely and contemptuously failing to obey said restraining order are guilty as of contempt of the district court for said county and state." It will be observed that the only act or thing alleged to have been done by the defendants is in the words, "and did vote to pass said ordinance." It is not alleged in this information that the injunction was violated by voting to pass the ordinance. The allegation is that it was violated, and that defendants voted to pass the ordinance. If it was directly alleged in the information that these defendants were members of the city council,

the question would still remain whether it was as such members that they voted to pass the ordinance. Where was this vote taken? Under what circumstances? Was it in the council chamber? Was the city council in session at the time? Was the question of the passage of this ordinance before the council for consideration and determination? None of these things appear from the allegations of the information. For all that appears from the information, these five men might have been a private party at one of their homes, and the vote taken might have been a straw vote to ascertain what the probable action of the council would be when the restraining order should be dissolved. Certainly, this is not stating the acts constituting the contempt with that certainty which "is required in the statement of an offense in a prosecution for a crime." The motion to quash the information should have been sustained, and for the error in refusing to do so the judgment must be reversed.

REVERSED AND DISMISSED.