BEVERLY A. FRANKS, APPELLEE, v. HARRY A. FRANKS, APPELLANT.

150 N. W. 2d 252

Filed May 5, 1967. No. 36495.

Robert E. Paulick and Gerald B. Buechler, for appellant.

Kelly & Kelly, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and MURPHY, District Judge.

MURPHY, District Judge.

Plaintiff, Beverly A. Franks, brought suit for divorce against defendant, Harry A. Franks, on the grounds of extreme cruelty and nonsupport of plaintiff and four minor children born to the parties. Defendant filed an answer admitting plaintiff's allegations concerning the fact of marriage and the birth of the four children, but denying plaintiff's other allegations. The trial court granted a divorce to the plaintiff, awarded her custody of the minor children, and made allowances for alimony and child support. The defendant perfected this appeal.

Neither the granting of the divorce nor the awarding of custody of the minor children to the plaintiff are assigned as error, and a review of the evidence shows that action by the trial court to have been fully warranted.

The assignments of error, in summary, are: That the judgment is contrary to the law and the evidence and is not sustained by sufficient evidence, but is based on evidence not properly before the court; that the trial judge erred in not disqualifying himself; and that the trial judge erred in subpoenaing and interrogating witnesses and receiving evidence, all upon his own motion.

The petition was filed May 24, 1966. The allegations of cruelty related to physical violence and defendant's association with women other than plaintiff. On June 24, 1966, the parties, after consultation with their respective attorneys, entered into a property settlement agreement expressly subject to the approval of the court and the granting of a divorce by the court. The agreement provided that plaintiff should have custody of their four children; that defendant should pay $150 per month child support and should be entitled to claim two of the children as dependents for federal income tax purposes; that plaintiff should receive certain household furnishings and an automobile, subject to encumbrances; that defendant should pay two medical bills; and that defendant should receive, subject to encumbrances, all per-

sonal property then in his possession, and a 1964 Chevrolet pickup, a 1965 Pontiac sedan, a 1958 Kenworth truck-tractor, a 1961 Mack truck-tractor, and two 1962 Hobbs trailers, which vehicles were subject to various mortgages, the balance due on which totaled approximately $29,000.

On September 8, 1966, the cause came on for trial, at which time defendant was not present, although his counsel was present and made no objection. Plaintiff testified that the parties had been separated for 2 years, during which time the defendant had acquired the vehicles enumerated in the property settlement agreement. She asked that the agreement be approved. She stated she was employed at a weekly take-home pay of $78.95, and her husband was a self-employed trucker. In response to inquiry by the trial court she indicated that she did not know the actual value of those vehicles, but was of the opinion that their value was less than the mortgage indebtedness against them.

While the trial judge was examining plaintiff he commented once: "We are talking here about a man who hasn't supported his family for two years, yet, he's got a '65 Pontiac sedan. I want to know why? If he hasn't supported his family in two years and bought all this equipment, there is something I don't know about." He also commented: "Well, you understand, Mrs. Franks, that the court has a duty to see the children's interest is protected in this thing, too, and if your husband isn't supporting and he has all these assets or has acquired them in the last two years, I feel it is my duty to see there is proper protection for the children. Whether or not he sold you a bill of goods in this settlement is yet to be seen. I have no question as to grounds. You may step down."

At the conclusion of that hearing, the trial court continued the matter over, stating, among other things, that it would make an independent investigation of the values because he felt there was some equity in the

property. The court also directed that the defendant appear at the later hearing.

On September 15, 1966, a brief hearing was held, at which time the court made some comments reflecting that it had, in fact, conducted an independent investigation. The court stated that defendant was living with another woman, naming her; and stated further that defendant had filed an assessment schedule setting her out as his wife. The court then set forth in detail how various vehicles, apparently those described in the property settlement agreement, were titled, either in defendant, or the other woman, or both.

On September 23, 1966, a further hearing was held, at which time, on its own motion, without any foundation having been laid, and over appropriate objections by counsel for the defendant, the trial court received in evidence two exhibits. One of these exhibits was a photocopy of a 1966 personal property tax return bearing the name of "Harry Franks." The other was a photocopy of the assessor's copy of two Nebraska motor vehicle registration certificates, with a dollar figure endorsed by pen on each. These certificates appear to relate to vehicles owned by defendant and described in the property settlement agreement. The trial court stated that the dollar figures were valuations obtained by it from assessor's office which the assessor's office called market value. Also on its own motion the trial court, having previously caused a subpoena to be issued for each, called as witnesses the defendant and the person whose name appeared on the registration certificates and also, as defendant's wife, on the tax return. Counsel were granted an opportunity to interrogate them, but did not do so. The court did interrogate them, but did not require that they answer any questions when they declined to do so under the Fifth Amendment. At that same hearing the trial court overruled a motion that he disqualify himself on account of prejudice against the defendant.

At the conclusion of this hearing the trial court granted plaintiff an absolute divorce and approved the property settlement with two exceptions. The plaintiff was awarded alimony in the sum of $3,000 and the amount of child support was fixed at $50 per month for each child.

A divorce case is for trial de novo on the record in the Supreme Court which is required to reach independent conclusions of fact without reference to findings made by the trial court. Benton v. Benton, 180 Neb. 759, 145 N. W. 2d 576. Upon such a trial de novo, incompetent, irrelevant, and immaterial evidence offered in the original trial, which was admitted over proper objection by the adverse party, will be disregarded. Young v. Young, 166 Neb. 532, 89 N. W. 2d 763; 5 C. J. S., Appeal and Error, § 1531, p. 1022.

"It is not the prerogative of a trial court to make an independent investigation of the issues between the parties when there is no provision of law providing for such an investigation." Caldwell v. Wells, 174 Neb. 288, 117 N. W. 2d 486. We think that the investigation made by the trial court in this instance did not comply, either in form or in substance, with that authorized by statute (§ 42-307, R. R. S. 1943), and that the fruits of that investigation must be totally disregarded here. Further, no compliance was had with the procedural requirements indicated by us in the case of Koser v. Koser, 148 Neb. 277, 27 N. W. 2d 162.

"A contract between husband and wife, made after and in consequence of severance of the marital relation and permanent separation, and providing for a division of property, and containing mutual releases of rights and obligations relative thereto, will be respected by the courts as presumably fair and valid, and a just and equitable adjustment of the matters of which it treats. But the courts will scrutinize such transactions closely, without too much regard for formal rules of pleading and procedure, and see to it that no unconscionable ad-

vantage is taken through fraud or intimidation, or by reason of ignorance, passion, or improvidence." Pittman v. Pittman, 148 Neb. 864, 29 N. W. 2d 790. Such contracts are not binding upon, but are advisory to, the court. Coker v. Coker, 173 Neb. 361, 113 N. W. 2d 329.

Guided by the above principles we find that the property settlement agreement of the parties is fair and valid; was not obtained through fraud, intimidation, overreaching, or other improper or unlawful means; and should be approved in full.

We are aware that generally a ruling of the trial court on a motion to disqualify the trial judge is immaterial on appeal to the Supreme Court where the case is an action in equity triable de novo. Lippincott v. Lippincott, 144 Neb. 486, 13 N. W. 2d 721. However, in this instance the cause must be remanded for further proceedings, and the trial court will have continuing jurisdiction concerning the custody and support of the minor children. It becomes, therefore, appropriate to consider that ruling in this case.

The Canons of Judicial Ethics provide, in essence, that a judge should be impartial, that his official conduct should be free from even the appearance of impropriety, and that his undue interference in a trial may tend to prevent the proper presentation of the cause and the ascertainment of the truth in respect thereto.

The determination by a trial judge upon a motion seeking to disqualify him on account of prejudice rests generally within his sound discretion, but such discretion is not absolute. If it appears that a fair and impartial trial cannot be had before him, it is his duty to transfer the case. Back v. State, 75 Neb. 603, 106 N. W. 787.

"A proper administration of the law demands not only that judges refrain from actual bias but also that they avoid all appearance of unfairness. All doubt or suspicion of bias should be jealously guarded against and, if possible, completely eliminated; and, when the circumstances and conditions surrounding a litigation are of

such nature that they might cast doubt on the impartiality of any judgment the judge may pronounce, the judge should certify his disqualification. Thus disqualification of a particular judge for bias or prejudice, although not technically required by the circumstances, is sometimes proper in order to dispel any thought or suspicion that the litigants may not be receiving impartial justice; * * *." 48 C. J. S., Judges, § 82 a, p. 1058.

Whether or not there was here an abuse of discretion need not now be determined. We have, however, come to the conclusion that upon remand of the cause, the motion of defendant that the trial judge disqualify himself should be granted. Because of the independent investigation conducted by him, it would seem inappropriate for him to continue to act in this cause.

For the reasons given, the decree of the district court is modified to provide for an allowance for child support in conformity with the property settlement agreement of the parties and to delete therefrom the provision for alimony in the sum of $3,000; such modification to relate back to the original date of the decree and to be in lieu of the provision therein made for plaintiff's support pending this appeal. The decree in all other respects is affirmed. The costs of the appeal are taxed to the defendant.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.