359 N.W.2d 777 (1984)
218 Neb. 830
R.D.N., Appellant,
v.
T.N., Appellant.
No. 84-223.
Supreme Court of Nebraska.
December 21, 1984.
*778 Drew H. Kouris, Council Bluffs, Iowa, for appellants.
Debra Stangl, Omaha, guardian ad litem.
KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.
BOSLAUGH, Justice.
This case is before this court after 11 years of proceedings in the courts below. The appeal is from a judgment terminating the parental rights of R.D.N., the petitioner father, and T.N., the respondent mother, to their minor child, C.A.N. The appellants contend (1) that the trial court did not have jurisdiction to terminate their parental rights; (2) that they were denied due process in that they were not given adequate notice of the reasons for the termination proceedings; (3) that the trial court erred when it refused to disqualify itself; and (4) that the evidence was insufficient to support the judgment.
This court reviews the matter de novo on the record.
The appellants were married in 1954 in Billings, Montana. At that time the petitioner, who is now 73 years old, had five children from a previous marriage and was the father of two children born of the respondent. When the latter two children were born, the respondent was married to another and had two children by that marriage. The respondent has been married a number of times without having been divorced from the previous husband. Respondent was an illegal entrant into this country and is currently under deportation orders by the U.S. Government. Respondent has been convicted for public prostitution on several occasions. She has stipulated that she is an unfit mother.
C.A.N. was born in Pensacola, Florida, on October 20, 1970, and is the youngest child of the marriage. She is the only child whose best interests are before this court.
The appellants separated when C.A.N. was 3 months old. Subsequently, the petitioner sued for divorce on the grounds "of actual violence committed by the Respondent upon the person of the Complainant attended [sic] with danger to his life or health and her adulteress [sic] conduct." A divorce was granted by the circuit court of Dale County, Alabama, in 1972, and the petitioner was given custody of the appellants' six minor children, including C.A.N. Sometime shortly thereafter, respondent stole the children away from petitioner in the middle of the night and brought them to Omaha, Nebraska.
This action originated on October 30, 1973, as a petition for registration of a foreign judgment. The respondent's demurrer to the petition was sustained. An amended petition was filed, and the action *779 proceeded as a proceeding for a writ of habeas corpus. On December 10, 1974, the trial court took custody of C.A.N. and ordered that she be placed in a foster home.
Over the years both parents have been guilty of "child snatching." Petitioner has, without permission, taken the child out of the jurisdiction on three different occasions, to places as far away as Florida and Oregon. Although on at least one occasion petitioner was granted possession of C.A.N. by the trial court, such possession was of short duration, and she has spent the vast majority of her life in foster care. Currently, C.A.N. is in the custody of the Nebraska Department of Public Welfare and being treated at the Evergreen Consultants in Human Behavior in Evergreen, Colorado.
The transcript filed in this court contains only a few of the hearings and orders alluded to in the five-volume record of testimony and exhibits. The transcript does show that on September 20, 1982, a hearing was had on the petitioner's motion for an order granting him the care and custody of both C.A.N. and one of her brothers. The court granted custody of the brother to the petitioner but ordered that the custody of C.A.N. remain in the state Department of Public Welfare pending a hearing set for December 14, 1982. There is no indication in the transcript of the result of that hearing. Chronologically, the transcript next contains an application for the termination of parental rights filed on June 24, 1983, by the guardian ad litem for C.A.N. The substance of that application provides:
1. That the Attorney and Guardian Ad Litem for the minor child has personally investigated the facts and circumstances on all matters pertinent to the best interests and welfare of the minor child herein, [C.A.N.].
2. It appears to the Guardian Ad Litem that the best interests and welfare of the minor child, [C.A.N.], requires the termination of the parental rights of both parents.
In the final order the trial court summarized the proceedings thereafter as follows:
In 1983, the Court-appointed Guardian Ad Litem made application to terminate parental rights as to the remaining child, [C.A.N.], who at that time was in the custody of the Court. Said Guardian Ad Litem represented to the Court that she had personally investigated the facts and circumstances on all matters pertinent to the best interests and welfare of the child, and that it appeared to said Guardian Ad Litem that the best interests and welfare of the child required the termination of the parental rights of both the parents. The Petitioner and his counsel were before the Court and were notified of the day and hour for hearing on said Application to Terminate. The Respondent was notified thereof and upon her representation to the Court that she was unable to afford legal counsel, and upon her request for such appointment, counsel was appointed for said Respondent. The parties were granted leave to plead to the Guardian Ad Litem's Application for Termination of Parental rights. The Nebraska Department of Public Welfare was also notifed [sic] and represented by personnel thereof, as well as being represented by the Attorney General of the State of Nebraska.
(Emphasis supplied.)
Trial was held on July 5, 6, and 7, 1983. At the beginning of the trial the petitioner's attorney stated to the court: "Now, the question of whether or not the Court was going to grant custody to [R.D.N.], or allow what sort of visitation is what I thought was going to be addressed today; not a question of whether [R.D.N.'s] parental rights were to be terminated." The court responded: "Anything else you want to contribute for the record? We will proceed and you may present your evidence on what you think is before the Court, Mr. Fiedler." The petitioner made no further objection, called his first witness, and proceeded with the hearing.
All parties submitted evidence and examined numerous witnesses, including the appellants and psychologists and foster care *780 workers who had worked with C.A.N. At the conclusion of the evidence the petitioner made an oral motion to take C.A.N.'s deposition, which motion was granted. The substance of that deposition, which was offered and received later, corroborated testimony at the trial that C.A.N. had been sexually attacked by her father, a brother, and a 16-year-old boy.
On August 10, 1983, the petitioner filed a motion for a hearing on rebuttal evidence, alleging in part: "4. That during the aforementioned Deposition, numerous evidentiary inconsistencies arose that now make it necessary to either take additional depositions or set the matter for an evidentiary hearing in order to rebut specific allegations contained within the minor child's testimony," and further setting forth specific "inconsistencies." On August 15, 1983, the petitioner filed a motion in opposition to termination of parental rights, alleging that he was "a fit and proper parent," that "parents have a right to raise a child as they see fit," that he "has not neglected his child," and that "parental rights are protected by the Fourteenth Amendment." The rebuttal hearing was had on August 17, 1983. On October 6, 1983, the court terminated the parental rights of the appellants to C.A.N.
The trial court noted that until a few days before the trial the petitioner "had been living in a highly disreputable abode for single working men (a former house of ill repute)" and that the "apartment" to which he had moved was "very inadequate." Furthermore, the court acknowledged, "The investigator who worked with the Guardian Ad Litem testified as to the grossly inadequate home conditions for any minor child," and concluded, "It would be inhumane to require this minor child to live in a residence of either the Petitioner or the Respondent...."
C.A.N. is now 14 years old. She is a disturbed child, possessing a history of bedwetting, crazy lying, stealing, gross exaggeration, masturbation, and sexual activity spanning back to repeated incidents at the age of 2 in which she would mimic sexual acts with dolls. Clinically, she has been diagnosed as an "unattached child," a child who has never developed a bond with a parental figure. Her therapist testified that C.A.N.'s prognosis hinges on the type of permanent life plan that becomes available to her: "Her prognosis is excellent if she can remain in her present environment or a similar environment where she will be with highly trained, skilled parents who are loving and committed to her and are able to provide consistency and support." However, in response to questioning concerning placement with her father, the therapist answered: "Her future would be like her past in that there would be an exacerbation of all the symptoms we have already mentioned."
This action began as a petition for a writ of habeas corpus to determine the petitioner's right to the custody of C.A.N. In that regard this court has said:
"`Such proceedings are governed by considerations of expediency and equity, and should not be bound by technical rules of practice.' ... `After the court's jurisdiction has been invoked by habeas corpus petition seeking custody of a child, the child is a ward of the court and its welfare lies in the hands of the court; * *.'..."
State ex rel. Cochrane v. Blanco, 177 Neb. 149, 152, 128 N.W.2d 615, 617 (1964). Indeed, this court has long recognized that, in controversies touching the custody of children, the welfare and best interests of the child surpass considerations of strictly legal rights. In re Application of Schwartzkopf, 149 Neb. 460, 31 N.W.2d 294 (1948).
The trial court found that appellants should not have possession and custody of C.A.N. and that their parental rights to her should be terminated. We believe the evidence supports the findings and order of the trial court and that it is in the best interests of this child that the parental rights of the appellants be terminated.
The appellants contend that the failure to include specific allegations in the *781 application for termination of parental rights filed by the guardian ad litem resulted in a denial of due process to the appellants. The appellants made no objection to the form of the application either before or during the trial. Generally, constitutional issues not properly before the court below will not be considered by this court for the first time on appeal. See, e.g., State ex rel. Douglas v. Schroeder, 212 Neb. 562, 324 N.W.2d 391 (1982). The appellants argue that the general rule should not be applied where obvious constitutional and procedural errors appear on the face of the record.
In the case at bar we think that no purpose would be served by considering the alleged error. Appellants have not demonstrated any manner in which they were prejudiced by the failure to include more specific allegations in the application.
The issues which were before the trial court on the petitioner's motion for custody were substantially the same as the issues upon the application to terminate parental rights. These issues had been the subject of litigation for over 10 years. There was no claim of surprise, except in regard to the deposition of C.A.N., which was taken by the petitioner after obtaining leave from the court. The deposition supplied direct evidence of sexual abuse by the petitioner, which up to that time if there was any doubt that the parental rights of the petitioner should be terminated, the deposition of C.A.N. eliminated it.
In this case the appellants were able to hear the entire case of the guardian ad litem. Then, on motion of the petitioner, a second hearing was held 5 weeks later in which they had an opportunity to rebut the case against them. The appellants offered no new evidence at that hearing, and they have not offered this court any suggestion of any further evidence which they would offer if given the opportunity for yet a third hearing. Under these circumstances any deficiency in the allegations of the application did not result in any prejudice to any substantial rights of the appellants.
The appellants contend that the district court did not have jurisdiction to terminate parental rights. The application was made pursuant to Neb.Rev.Stat. § 42-364 (Cum.Supp.1982), which provides in relevant part: "(4) Whenever termination of parental rights is placed in issue by the pleadings or evidence, the court shall transfer jurisdiction to a juvenile court established pursuant to Chapter 43, article 2, unless a showing is made that the district court is a more appropriate forum."
It is apparent from the record that the district court was the more appropriate forum. Section 42-364(4) further provides in part: "In making such determination the court may consider such factors as cost to the parties, undue delay, congestion of dockets, and relative resources available for investigative and supervisory assistance." In light of the 10 years of proceedings before the district court, it would be unreasonable to conclude that the district court should not have retained jurisdiction of the application.
It is unnecessary to consider the third assignment of error relating to the district court's refusal to disqualify itself. This court has stated previously: "We also observe that a ruling of a trial judge on a motion to disqualify himself is immaterial where the cause is an action triable de novo in this court." Christensen v. Christensen, 191 Neb. 355, 360, 215 N.W.2d 111, 115 (1974).
The appellants' final contention, that the evidence was insufficient to support a judgment, is completely without merit. The respondent stipulated that she was an unfit mother. The record shows the petitioner has sexually abused C.A.N. and has not shown that he is capable of providing her with adequate housing. The record is replete with evidence of the need for a stable environment for C.A.N., of the fear C.A.N. has of the petitioner, and of the effect of infrequent visits which cause her emotional distress and adversely affect her progress and treatment. The evidence is more than sufficient to support the termination of the appellants' parental rights.
*782 The judgment of the district court is affirmed.
AFFIRMED.