TAMARA M. GIBILISCO, APPELLEE AND CROSS-APPELLANT, v.
DAVID A. GIBILISCO, APPELLANT AND CROSS-APPELLEE.

637 N.W.2d 898

Filed January 18, 2002. No. S-01-224.

Tim J. Kielty for appellant.

Mark J. Milone, of Govier, Milone & Streff, L.L.P., for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The trial of this marital dissolution action took place in two separate proceedings. At the first hearing, the parties agreed that the issues to be decided would be limited to the distribution of marital assets and debts because they were still working on parenting and custody issues through mediation. After that hearing, the district court sent a letter to counsel for both parties with its findings of fact and conclusions of law. The court divided the marital assets and debts, and to the surprise of appellant, David A. Gibilisco, the court, without taking evidence on the custody issue, awarded sole custody of the parties' child to appellee, Tamara M. Gibilisco. David then filed a motion to recuse the judge. The judge refused.

At the second hearing, the custody issues were addressed, after which the court again granted Tamara sole physical custody of the parties' child with reasonable visitation for David to be determined by the parties through mediation. We affirm that part of the district court's judgment which divided the marital assets and liabilities. Because the court's premature custody determinations would lead a reasonable person to question the judge's impartiality, we reverse that portion of the decree deciding issues of custody and support and remand the cause with directions to recuse.

## ASSIGNMENTS OF ERROR

David assigns that the district court erred in (1) failing to recuse herself, (2) finding that it was in the child's best interests that sole physical custody should be placed with Tamara and not

David, and (3) failing to make an equitable distribution of property and debt.

## BACKGROUND

Tamara and David were married on July 22, 1989, and a child was born on August 3, 1993. Both parties worked full time during the marriage. Tamara filed for dissolution in January 1999, alleging that it was in the child's best interests for her to have sole physical custody with reasonable and liberal visitation for David. After a hearing on the parties' motions for temporary orders, however, the court noted that the parties had reached an agreement and entered an order for joint physical custody. Tamara was given exclusive use of the home and was responsible for the mortgage and home equity loan payment, utilities, and maintenance. David was required to make the joint Visa card payments and the payments on his truck, and to maintain the family's health insurance through his employer. The record does not indicate the amount he paid on the Visa account during the separation.

In October 1999, the Douglas County conciliation court filed its disposition report with the district court, which contained the parenting plan that Tamara and David had agreed to through mediation. The plan called for the parties to continue the joint physical custody arrangement but included more details for holidays, special occasions, and vacations. The parties also agreed to enter remediation before seeking a solution in court in the event of future disagreements regarding the parenting plan.

The parties agreed that the only issue to be decided at the first hearing in April 2000 was the distribution of marital assets and debts because they had been referred back to mediation to resolve parenting issues. There was no evidence adduced on the custody or support issues, and neither party requested the court to incorporate the parenting plan into the decree. See Neb. Rev. Stat. § 43-2917 (Reissue 1998).

The evidence showed that the parties earned nearly equal salaries and had retirement accounts that were approximately equal in value. After Tamara filed for divorce in January 1999, David remained in the house until March 25, and Tamara paid for all of the household expenses thereafter. David lived with his

mother from March 1999 until January 2000 and did not pay rent during this time.

The parties had taken out a home equity loan about a year before the divorce, and the balance was paid with the proceeds from the sale of the home. The home equity loan, approximately $15,000, was used to make purchases and pay debts, including the indebtedness on the loan obligation for Tamara's vehicle. Neither party, however, knew how much of the home equity loan had been applied on the balance of Tamara's car loan obligation, and there is no evidence in the record on this issue. Tamara also borrowed $6,500 against her 401K plan in order to pay for household expenses during the parties' separation. The parties agreed that the value of Tamara's vehicle at the time of the hearing was $14,600 and that the value of David's vehicle was $10,050, with an indebtedness of approximately $5,200.

Both parties offered, and the court received, suggestions related to the disposition of the financial issues. In addition, Tamara's suggestions included recommendations for sole custody for Tamara, a visitation schedule, and child support issues. Tamara's counsel, however, stated that the custody and support issues would need to be decided at a later time. Tamara also offered evidence of the parties' incomes, her expenses, and child support calculations based on her having sole physical custody. But her counsel again specified that the exhibits were offered with the understanding that the custody issues had not yet been resolved. On that basis, David's counsel did not object to the exhibits, and although Tamara's child support calculations were received, the court stated that they would not be considered.

After this hearing, the court sent a letter to each party's counsel setting out the court's findings of fact and conclusions of law. The letter included findings and conclusions related to the unsubmitted issues of custody, visitation, and support, and resolved these issues exactly as Tamara had requested in her suggestions to the court. The court found that Tamara should be granted sole physical custody subject to reasonable and liberal visitation by David, ordered David to pay $400 per month in child support, and set out the same visitation schedule that Tamara had submitted. The court also decided all of the financial issues in accordance with Tamara's suggestions. The court determined that the

proceeds from the sale of the house would be used to pay the outstanding debt on the joint Visa card and that the balance of the proceeds would be divided equally. Tamara was also given the escrow refund of $1,100, and David was required to pay Tamara $369, half of the repair costs to prepare the residence for sale. Each party was awarded his or her vehicle, and David was required to pay the remaining loan obligation on his vehicle.

After this letter was sent, David filed a motion requesting that the judge recuse herself from further participation in the matter. He argued that the court's custody determinations deprived him of his right to present evidence on the issue and that the disclosure of the court's predisposition regarding custody interfered with his right to a fair trial. He also argued that the matter could not be resolved in a way that would give him a reasonable expectation of impartiality. At a hearing on the motion in October 2000, the judge explained that the inclusion of the custody award in her conclusions of law was inadvertent and would not keep her from having an open mind regarding the custody issues. The court denied the motion.

The second hearing was held in January 2001 to decide the issues of custody, child support, and visitation. David renewed his motion for recusal, which was again overruled. At this hearing, Tamara claimed that joint physical custody was not working because the arrangement was disruptive to the child and the parties were not communicating well. David conceded that the parties were not communicating well, but he claimed that their communication problems could be worked out and that there was not a substantial or material change in circumstance that would warrant a change in custody.

After this hearing, the court granted joint legal custody to the parties, ordered that Tamara would be the primary residential parent subject to reasonable visitation by David, and required the parties to return to mediation to determine the visitation schedule. The distribution of assets and debts was the same as the court's conclusions at the end of the first hearing.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine

whether there has been an abuse of discretion by the trial judge. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001).

## ANALYSIS

### MOTION FOR RECUSAL

David contends that the judge should have sustained his motion as she had demonstrated a bias against him and in favor of Tamara. Tamara counters that the court's denial of the motion was proper because the inclusion of custody issues in its letter after the first hearing was inadvertent and the judge assured the parties that she could keep an open mind. Alternatively, Tamara argues that the denial of David's motion for recusal is immaterial because the standard of review is de novo on the record.

It is correct that we have stated that a ruling of the trial court on a motion to disqualify the trial judge is immaterial on appeal where the case is an action in equity triable de novo. See, e.g., *Poll v. Poll*, 256 Neb. 46, 588 N.W.2d 583 (1999). But our application of this rule has been inconsistent. Of the six cases where we have cited this rule, only one case actually declined to consider the judge's refusal to disqualify himself. See *R.D.N. v. T.N.*, 218 Neb. 830, 359 N.W.2d 777 (1984). In another case, the rule was cited in dicta because there was no motion for recusal and we had already concluded the court acted correctly. See *Christensen v. Christensen*, 191 Neb. 355, 215 N.W.2d 111 (1974). In an earlier marital dissolution proceeding, we determined that the judge should have recused himself despite our de novo review. *Franks v. Franks*, 181 Neb. 710, 150 N.W.2d 252 (1967). We have also cited this general rule in an appeal from a summary judgment order, in which we determined that the trial judge should have recused himself. See *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995). Finally, in two cases, we cited the general rule but also concluded that the court did not

abuse its discretion in overruling the motion. See, *Poll v. Poll, supra*; *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980).

 Thus, the rule can be more accurately stated that a motion to recuse for bias or impartiality is initially entrusted to the discretion of the trial court, and the trial court's ruling will be affirmed absent an abuse of that discretion. We also note that marital dissolution proceedings are no longer reviewed de novo. Rather, these cases are now reviewed de novo on the record for an abuse of discretion, a standard that gives some deference to the trial court's findings and conclusions. See *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998). To the extent that these prior cases hold that a trial court's ruling on a motion to recuse is immaterial under a de novo review, they are hereby disapproved.

In *Franks*, we determined that the trial judge should disqualify himself on remand because of the appearance of impartiality. *Franks* is factually distinguishable from this case. The trial judge in that case had made an independent investigation and then had modified the settlement agreement the parties had reached. But the underlying reasoning is applicable. We noted that the trial court would have continuing jurisdiction over the custody and support of the minor children and determined that the judge's actions made it inappropriate for him to continue in the case. See *id.* We stated:

"A proper administration of the law demands not only that judges refrain from actual bias but also that they avoid all appearance of unfairness. All doubt or suspicion of bias should be jealously guarded against and, if possible, completely eliminated; and, when the circumstances and conditions surrounding a litigation are of such nature that they might cast doubt on the impartiality of any judgment the judge may pronounce, the judge should certify his disqualification. Thus disqualification of a particular judge for bias or prejudice, although not technically required by the circumstances, is sometimes proper in order to dispel any thought or suspicion that the litigants may not be receiving impartial justice . . . ."

181 Neb. at 715-16, 150 N.W.2d at 256 (quoting 48 C.J.S. *Judges* § 82a (1947)). See, also, *Jim's, Inc. v. Willman, supra* (determining that litigant's perception of trial judge's actions

will sometimes require recusal even when no actual bias is proved and despite summary judgment standard of review).

More recently, we discussed a litigant's burden of proof when seeking to disqualify a judge because of bias or prejudice in *State v. Pattno*, 254 Neb. 733, 579 N.W.2d 503 (1998). Although *Pattno* was an appeal from a criminal sentencing hearing, we relied upon civil cases in arriving at a reasonable person test for determining a judge's bias. Under *Pattno*, a trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. This test is consistent with Canon 2 of the Nebraska Code of Judicial Conduct, which requires that a judge avoid impropriety and the appearance of impropriety in all activities, and Canon 3, which requires that a judge perform all duties impartially.

Here, the trial judge's statements at the hearing on the motion for recusal indicated that the inclusion of custody issues in her findings of fact and conclusions of law were unintentional and that she felt she could keep an open mind. But her custody determinations in Tamara's favor when no evidence had been presented on these issues would lead a reasonable person to question her impartiality. After these premature determinations were made, any later decision on the custody issues would be tainted with the appearance of bias. This is particularly true because the court's findings and conclusions so closely followed all of Tamara's suggestions. Under these facts, we are more concerned with how a reasonable person would perceive the trial judge's actions than the judge's actual bias. See, *State v. Pattno, supra*; *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995). Therefore, we conclude the cause must be reversed with directions for a new trial on the issues of custody and support. Because David's motion for recusal was directed only at the judge's participation in the second hearing dealing with custody, we now resolve the property division issues.

## PROPERTY DIVISION

David also claims that the district court failed to make an equitable distribution of property and debt. He argues two points: (1)

that the court erred in failing to order that the proceeds from the sale of the home be used to pay off his car loan and (2) that the court erred in allocating credit card debt to him for a period of time during which both parties resided in the home and made charges to the account. Tamara claims that the division of marital property and debt was equitable because during the year of the parties' separation, she took care of all the family household expenses and David did not pay for child support or household expenses.

Under Neb. Rev. Stat. § 42-365 (Reissue 1998), the purpose of a property division is to distribute the marital assets equitably between the parties. Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000).

Equitable property division under § 42-365 is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

The record shows that Tamara received $51,924.74 of the total marital assets, which included her half of the household goods and proceeds from the sale of the home, the escrow refund, and the value of her vehicle. She was responsible for $8,661.29 of the marital liabilities, which included half of the joint Visa card balance at the time of the dissolution, the loan obligation against her 401K plan, and half of the home repair costs.

David received $46,173.83 in marital assets and was responsible for approximately $7,383.29 in marital liabilities. His portion of the liabilities included the loan obligation for his vehicle, half of the home repair costs, and half of the joint Visa balance as of the dissolution. The net value of the marital estate was $82,053.99. Of that amount, Tamara received $43,263.45, or 53 percent, and David received $38,790.54, or 47 percent. But David complains that the court unfairly allocated him a

joint Visa card debt for a period of time during which the parties were still living together. He claims that the proceeds of the house should have been used to pay him the balance of the Visa card at the time the parties separated—$6,177.80—before being distributed.

The court ordered the balance of the joint Visa debt as of the time of the dissolution—$3,583.38—to be paid from the house proceeds. David is correct in stating that he was required to make payments toward the Visa debt during the separation, but both parties were allocated a portion of the joint marital liabilities to make payments toward during the separation. Although Tamara had exclusive use of the family home, her payments toward the joint marital liabilities were considerably higher than David's. There is no merit to David's contention.

David next claims that the court erred in not applying the sale proceeds from the home to pay off his indebtedness on his vehicle. He argues that because a portion of the home equity loan was used to pay off the indebtedness on Tamara's vehicle, his vehicle indebtedness should also be paid. Neither party, however, provided evidence establishing what portion of the home equity loan was used to pay off the indebtedness of Tamara's vehicle, and there is no evidence in the record upon which this court can make that determination. Moreover, David was not required to make any contributions toward household expenses during the separation. On this record, the district court did not err in requiring David to be responsible for the loan obligation on his vehicle.

## CONCLUSION

We affirm the district court's division of marital assets and liabilities. We conclude, however, that the district court abused its discretion in overruling David's motion for recusal and reverse that portion of the decree dealing with issues of custody and support. Upon remand, the district court is directed to grant the motion for recusal.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., not participating.